# United States Court of Appeals for the Federal Circuit

---

**XIANLI ZHANG, GUIMIN LU, BAO HUA HE, BAOWEI DING, AND JILIN HU,**
*Plaintiffs-Appellants,*

**and**

**HYUNJIN (SAIPAN) CORPORATION**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

---

2010-5026, -5027

---

Appeal from the United States Court of Federal Claims in consolidated Case Nos. 08-CV-269 and 08-CV-270, Judge Christine O.C. Miller.

---

Decided: April 6, 2011

---

DAVID W. AXELROD, Schwabe, Williamson & Wyatt, of Portland, Oregon, argued for plaintiffs-appellants. With him on the brief was ALEXIS A. FALLON, Fallon Law Offices, Southborough, Massachusetts.

DAMON W. TAAFFE, Attorney, Appellate Section, Tax Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were JOHN A. DICICCO, Acting Assistant Attorney General, and JONATHAN S. COHEN, Attorney.

---

Before LOURIE, BRYSON, and PROST, *Circuit Judges*.

LOURIE, *Circuit Judge*.

Plaintiffs-Appellants Xianli Zhang, Guimin Lu, Bao Hua He, Baowei Ding, Jilin Hu (collectively, "the Zhang plaintiffs") and Hyunjin (Saipan) Corporation ("Hyunjin") appeal from a decision of the United States Court of Federal Claims, which granted Defendant-Appellee's motion for judgment on the pleadings. Because the Court of Federal Claims correctly granted the government's motion, we affirm.

## BACKGROUND

The dispute in this case centers on whether the Zhang plaintiffs and Hyunjin are entitled to a refund of taxes paid under the Federal Insurance Contribution Act ("FICA"), 26 U.S.C. (I.R.C.) §§ 3101, 3111 (2006), for certain work performed in the Commonwealth of the Northern Mariana Islands ("CNMI").

### A. The Parties

The Zhang plaintiffs are nonresident aliens, citizens of the People's Republic of China, who worked for Hyunjin in the CNMI as nonimmigrant alien contract workers between 2003 and 2006. *Zhang v. United States*, 89 Fed. Cl. 263, 266 (2009) ("*Op.*"). On April 14, 2008, the Zhang plaintiffs filed suit in the Court of Federal Claims against the United States for reimbursement of about $9,862 in FICA taxes, which were allegedly wrongfully assessed

and erroneously paid to the United States between 2003 and 2006.[1] *Id.*; J.A. 56.

On July 29, 2008, Hyunjin, a CNMI corporation, filed suit in the Court of Federal Claims against the United States for a refund of $1,397,713 in FICA taxes paid for hundreds of its foreign temporary contract employees admitted to the CNMI to perform work between 2003 and 2005. *Op.* at 266; J.A. 62.

The court consolidated the two actions. As explained further below, both the Zhang plaintiffs and Hyunjin (collectively, "Plaintiffs" or "Appellants") alleged that the CNMI was not part of the "United States" for FICA purposes, and that the laws governing the relationship between the CNMI and the United States affirmatively excluded Plaintiffs from FICA taxation. *Op.* at 266; J.A. 48, 61.

## B. FICA

FICA is an employment tax under the Internal Revenue Code. The FICA statutory scheme generally requires payment of taxes by employees on wages received and payment of taxes by employers on those same wages. The former are assessed under I.R.C. § 3101, the latter under I.R.C. § 3111. In each instance, the taxes are assessed on wages paid or received "with respect to employment (as defined in section 3121(b))." I.R.C. §§ 3101, 3111. As used in this context, "employment" means "any service, of whatever nature, performed . . . by an employee for the

---

[1]  The Zhang plaintiffs also filed suit on behalf of one or more classes of similarly situated foreign temporary contract workers who, they alleged, erroneously paid FICA taxes to the United States. J.A. 49. Because the Court of Federal Claims ultimately granted the government's motion for judgment on the pleadings, the court did not reach the class certification issue, nor do we.

person employing him, irrespective of the citizenship or residence of either, . . . *within the United States.*" I.R.C. § 3121(b) (emphasis added).

The term "United States" is defined for FICA purposes as follows: "The term 'United States' when used in a geographical sense includes the Commonwealth of Puerto Rico, the Virgin Islands, Guam, and American Samoa." I.R.C. § 3121(e). Notably, FICA's definition of "United States" does not explicitly include the CNMI. This omission formed the basis for Plaintiffs' contention that the CNMI is not "within the United States" for purposes of I.R.C. § 3121(b) and thus that FICA taxes are not owed on wages received or paid with respect to employment in the CNMI. *Op.* at 266.

### C. The Relevant History and Laws of the CNMI

The parties do not materially dispute the following facts as found by the Court of Federal Claims. The Northern Mariana Islands ("NMI") comprise the northern islands of the Mariana archipelago. *Op.* at 267. Guam, the southernmost island in the archipelago, is a separate political entity under the sovereignty of the United States. *Id.* The United States military occupied the NMI at the close of World War II, and in 1947 the United Nations designated portions of Micronesia, including the NMI, as the United Nations Trust Territory of the Pacific Islands ("Trust Territory"). *Id.* The United States was appointed as trustee of the Trust Territory. *Id.* Under the agreement governing the trusteeship ("Trusteeship Agreement"), the United States did not have sovereignty over the NMI, but was empowered to apply federal laws to the NMI; in addition, NMI citizens were not citizens or nationals of the United States. *Id.*

Negotiations in the early 1970s to establish a permanent union between the United States and the NMI

resulted in the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America, Act of March 24, 1976, Pub. L. No. 94-241, 90 Stat. 263 (*codified as amended at* 48 U.S.C. § 1801 note (2006)) ("Covenant"). *Op.* at 267. The Covenant was drafted to govern the relations between the NMI and the United States. *Id.* It was approved by NMI voters in a plebiscite and by a resolution of the United States Congress, and was thereafter signed into law by President Gerald Ford on March 24, 1976. *Id.* Most of the Covenant's provisions became effective either in 1976 upon the Covenant's approval or in 1978 on the effective date of the NMI Constitution. *Id.*; Covenant Art. X. The Covenant contemplated that the CNMI would come into existence and supersede the NMI upon termination of the Trusteeship Agreement. *Op.* at 268; Covenant § 1003. On January 1, 1987, the entire Covenant became effective and the CNMI entered into full union with the United States after President Ronald Reagan issued a proclamation terminating the Trusteeship Agreement. *Op.* at 268.

Pursuant to § 504 of the Covenant, in the interim period between the approval of the Covenant and the termination of the Trusteeship Agreement, the Northern Mariana Islands Commission on Federal Laws was appointed to recommend to Congress which, and to what extent, federal laws would be applicable to the NMI. *Id.* Two reports issued by the Commission to Congress during this interim period form the subject of certain arguments on appeal. The Commission issued its first report in January 1982. *See* N. Mariana Islands Comm'n on Fed. Laws, An Interim Report of the N. Mariana Islands Comm'n on Fed. Laws to the Congress of the United States (1982) (hereinafter, "First Interim Report"). The Commission issued its second report in August 1985. *See* N. Mariana Islands Comm'n on Fed. Laws, Welcoming

America's Newest Commonwealth, The Second Interim Report of the N. Mariana Islands Comm'n on Fed. Laws to the Congress of the United States (1985) (hereinafter, "Second Interim Report").

Of additional relevance to the present appeal, Congress enacted two laws during the interim period between the Covenant's approval and the termination of the Trusteeship Agreement. In 1981, Congress amended the definition of "State" in 42 U.S.C. § 1301 to specify certain Social Security benefit laws in which the NMI would be included. In 1983, Congress passed Pub. L. No. 98-213, § 19, 97 Stat. 1459, 1464 (the "1983 Act"), which provided that NMI citizens would be treated as United States citizens for certain purposes. (As explained further below, Appellants contend that those two laws effectively exclude Appellants from the FICA taxation scheme.)

The overall structure of the Covenant was ably summarized in the opinion of the Court of Federal Claims. *Op.* at 269-72. Of particular relevance on appeal is Article VI of the Covenant, which governs "Revenue and Taxation."[2] *Op.* at 270. Section 601 establishes an income tax system for the NMI. Section 601(c) states: "References in the Internal Revenue Code to Guam will be deemed also to refer to the Northern Mariana Islands, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof or of this Covenant." Covenant § 601(c).

Section 606 deals generally with the application of the United States Social Security System to the CNMI. *Op.*

---

[2] The parties also dispute the relevance of Covenant Article V, § 502(a), to Appellants' duty to pay FICA taxes. *Op.* at 279. As we note *infra*, in view of our holding we need not address the parties' arguments regarding § 502(a).

at 271. Section 606(a) provides for the creation, not later than the date of the Covenant's approval, of a new "Northern Mariana Islands Social Security Retirement Fund" from that portion of the Trust Territory Social Retirement Fund attributable to the Northern Mariana Islands. Covenant § 606(a). Section 606(c) provides that, upon termination of the Trusteeship Agreement, the Northern Mariana Islands Social Security Retirement Fund would be transferred into the appropriate Federal Social Security Trust Funds, and that NMI domiciliaries entitled to social security benefits under the laws of the Trust Territory or the NMI will be entitled to United States Social Security benefits.

Central to the dispute on appeal, Covenant § 606(b) applies FICA taxes to the NMI "as they apply to Guam":

> *Those laws of the United States which impose excise and self-employment taxes to support or which provide benefits from the United States Social Security System* will on January 1 of the first calendar year following the termination of the Trusteeship Agreement or upon such earlier date as may be agreed to by the Government of the Northern Mariana Islands and the Government of the United States *become applicable to the Northern Mariana Islands as they apply to Guam.*

Covenant § 606(b) (emphases added). The parties do not dispute that the "self-employment taxes" portion of § 606(b) refers to the self-employment tax enacted by the Self-Employment Contributions Act of 1954, ch. 736, 68A Stat. 415 (codified as amended at I.R.C. §§ 1401-1403 (2006)) ("SECA"). In contrast, the parties vigorously dispute the extent to which § 606(b) applies the FICA tax on wages for employees and employers to the CNMI and, ultimately, to Plaintiffs.

### D.  The Court of Federal Claims

On November 7, 2008, the government filed a motion for judgment on the pleadings.  Def.'s Mot. J. Pld'gs, Nos. 08-269 T & 08-270 T (Fed. Cl. Nov. 7, 2008).  First, the government argued that the Plaintiffs owed FICA taxes because the CNMI is "within the United States" under the Internal Revenue Code, by its relationship with Guam under the terms of the Covenant.  *Id.* at 8-9.  The government then turned to the specific types of FICA taxes applied by the Covenant.  The government conceded that "on its face Covenant § 606(b) explicitly applies only the employer's FICA excise tax and the SECA tax on the CNMI."  *Id.* at 13.  Nevertheless, the government asserted that several provisions of the Covenant demonstrate that the FICA employee tax applies to the Zhang plaintiffs, and that legislative history shows that the drafters intended § 606(b) to apply all of the Social Security taxes to the CNMI.

In a careful and detailed opinion, the Court of Federal Claims granted the government's motion for judgment on the pleadings pursuant to Rule of the Court of Federal Claims 12(c).[3]  *Op.* at 287.  First, the court determined that FICA applies to the CNMI through its relationship with Guam by virtue of § 601(a).  *Id.* at 277.  Next, with regard to the specific FICA provisions mandated by the Covenant, the court held that Covenant § 606(b) applies the FICA employee tax and the matching FICA employer tax to all the wages of all employees and employers in CNMI.  The court concluded that interpreting § 606(b) to omit the FICA employee tax produced an "absurd result," in that it would grant Social Security benefits to employees earning wages in the CNMI, but would not impose the

---

[3]  RCFC 12(c) is identical to Fed. R. Civ. P. 12(c). *Op.* at 267.

corresponding requirement that such workers pay their share of the FICA tax burden. *Id.* at 279. Drawing on the Covenant's legislative history, which we discuss further below, the court determined that "[t]he only rational conclusion that can be drawn from the legislative history is that the drafters of the Covenant, the Commission, and Congress all intended that section 606(b)'s reference to 'excise taxes . . . to support' referred to FICA, including the employer and employee wage tax provisions in I.R.C. §§ 3101 and 3111." *Id.* at 281. Based on its analysis, the court concluded that the FICA tax on employee wages applies to employees working in the CNMI by operation of § 606(b) of the Covenant.[4] *Id.*

The Court of Federal Claims then considered Plaintiffs' arguments that, prior to the effective date of Covenant § 606(b), Congress enacted legislation that curtailed the application of FICA to the CNMI. *Id.* at 281. The court rejected Plaintiffs' argument that amendments to 42 U.S.C. § 1301 in 1981 evinced Congress's desire to specify the provisions of the Social Security Act for which the CNMI will be considered part of the United States. *Id.* at 282. The court also rejected Plaintiffs' argument that, by enacting the 1983 Act, Congress effectively amended Covenant § 606(b) and limited the applicability of FICA taxes to the CNMI. *Id.* at 286.

The court entered final judgment on September 30, 2009. Plaintiffs appealed. Pursuant to 28 U.S.C. § 1295(a)(3), we have jurisdiction over appeals from final decisions of the United States Court of Federal Claims.

---

[4]    The court also held that Covenant §§ 502(a)(2) and 601(c) did not apply the FICA employee tax to the CNMI. *Op.* at 279.

DISCUSSION

When reviewing a decision of the Court of Federal Claims to grant judgment on the pleadings under RCFC 12(c), "we apply the same standard of review as a case dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and review the judgment *de novo*." *Cary v. United States*, 552 F.3d 1373, 1376 (Fed. Cir. 2009). We presume that the facts alleged by the plaintiffs are true, and we draw all reasonable inferences in the plaintiffs' favor. *Id.* An underlying issue of statutory interpretation is a question of law, which we review *de novo*. *Norfolk Dredging Co. v. United States*, 375 F.3d 1106, 1108 (Fed. Cir. 2004).

The canons of statutory construction guide our interpretation of the Covenant, which has been codified as a federal statute. *See N. Mar. I. v. United States*, 279 F.3d 1070, 1074 (9th Cir. 2002). When interpreting a statute, we start with the language of the statute itself. *Williams v. Taylor*, 529 U.S. 420, 431 (2000). We search for Congress's intent using both the text and structure of the statute. *Alexander v. Sandoval*, 532 U.S. 275, 288 (2001). In reviewing the statute's text, we give the words "their 'ordinary, contemporary, common meaning,' absent an indication Congress intended them to bear some different import." *Williams*, 529 U.S. at 431 (quoting *Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 207 (1997)); *see also Moskal v. United States*, 498 U.S. 103, 108 (1990) ("In determining the scope of a statute, we look first to its language, giving the words used their ordinary meaning." (citations and internal quotation marks omitted)). Dictionary definitions can elucidate the ordinary meaning of statutory terms. *See, e.g.*, *CSX Transp., Inc. v. Ala. Dep't of Revenue*, 131 S. Ct. 1101, 1108 (2011); *Carcieri v. Salazar*, 129 S. Ct. 1058, 1064 (2009); *Williams*, 529 U.S.

at 431-32; *Walters*, 519 U.S. at 207-08; *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 388 (1993).

If the statute is clear and unambiguous, then the plain meaning of the statute is conclusive, and we give effect to the unambiguously expressed intent of Congress. *Sullivan v. Stroop*, 496 U.S. 478, 482 (1990). There is "no errorless test" for identifying unambiguous statutory language, although "absurd results are to be avoided and internal inconsistencies in the statute must be dealt with." *United States v. Turkette*, 452 U.S. 576, 580 (1981). When the statutory language is ambiguous, legislative history can illuminate Congress's intent. *See In re Swanson*, 540 F.3d 1368, 1376 (Fed. Cir. 2008).

Appellants advance two main arguments as to why they are entitled to a refund of FICA taxes. First, Appellants argue that the FICA taxation scheme does not generally apply to the CNMI.[5] Appellants allege that the Court of Federal Claims erred by mechanically applying the "as they apply to Guam" clause in Covenant § 606(b) without first determining Congress's intent or considering the unique provisions of the Covenant that distinguish the CNMI from Guam. Appellants argue that their construction of § 606(b), which excludes nonimmigrant alien contract workers such as the Zhang plaintiffs, is supported by the subsection's language and its legislative

---

[5]    Appellants' arguments on this point are somewhat inconsistent. As discussed further below, Appellants at times argue that Congress never included the CNMI in the definition of the "United States" for FICA purposes. Appellants' Opening Br. at 43-44. Elsewhere, Appellants concede that Congress intended that FICA apply to citizens and domiciliaries of the CNMI. Appellants' Reply Br. at 1. Despite these inconsistencies, FICA's application to the CNMI is a threshold issue in this case, so we address it *infra*.

history. Appellants contend that §§ 606(a) and (c) limit the scope of § 606(b), such that § 606 as a whole applies only to CNMI citizens or domiciliaries who would qualify for United States citizenship under the Covenant. Appellants further contend that the term "those laws" in § 606(b) must be considered as of the effective date of that subsection, *i.e.*, January 1, 1987, and thus must take into account laws—including 42 U.S.C. § 1301 and the 1983 Act—that were enacted after the Covenant's approval but before § 606(b)'s effective date, and that serve to limit the application of FICA taxes through the Covenant.

Second, Appellants assert that the Zhang plaintiffs do not owe FICA taxes because, contrary to the decision of the Court of Federal Claims, Covenant § 606(b) does not impose the employee FICA tax on them. Appellants take issue with the court's rationale in construing § 606(b). Specifically, the court noted that it would produce an "absurd result" if § 606(b) were construed to "apply Social Security benefits to [nonresident alien] employees earning wages in the CNMI, but . . . not impose the corresponding requirement that they pay their share of the FICA tax burden." *Op.* at 279. According to Appellants, the court's rationale does not apply to the Zhang plaintiffs, who, as nonresident alien contract workers, are ineligible for Social Security benefits. Finally, Appellants contend that, because the Zhang plaintiffs do not owe FICA taxes on their wages, neither does Hyunjin as their employer.

The government argues in response that Congress intended the Covenant to impose FICA taxes on all employees and employers in the CNMI, as demonstrated by the language and structure of the Covenant. The government asserts that, notwithstanding the inadvertent failure of the Covenant drafters to mention the employee FICA tax, § 606(b) confirms that FICA applies to the CNMI as it applies to Guam (where both the employee and employer

FICA taxes apply).[6]  The government alleges that the absence of the employee FICA tax from the text of § 606(b) "is simply a drafting error."  Appellee Br. at 37. In support, the government points to the text and legislative history of § 606(b).  The government contends that §§ 606(a) and (c) do not limit the scope of § 606(b) to CNMI citizens and domiciliaries.  Regarding Appellants' assertion that the "absurd result" envisioned by the Court of Federal Claims does not apply to the Zhang plaintiffs, the government responds that, even if the Zhang plaintiffs are not entitled to Social Security benefits, Congress is entitled to impose FICA taxes while limiting or denying benefits.[7]  The government further contends that, contrary to Appellants' arguments, no law enacted after the Covenant's approval alters Congress's intent that all employees and employers in the CNMI must pay FICA taxes on wages.

In addition to the arguments in its brief, the government at oral argument advanced an alternative basis for affirming the holding of the Court of Federal Claims.  The

---

[6]  In the alternative, the government argues that the FICA tax on employee wages applies to the CNMI via Covenant §§ 502(a)(2) or 601(c).  As noted *infra*, because we hold that the FICA employee tax applies via Covenant § 606(b), we need not reach these alternative arguments.

[7]  At oral argument, the government clarified its position on this point.  The government essentially conceded that the Zhang plaintiffs are subject to FICA taxation without receiving any benefit from the Social Security System, yet argued that the United States routinely enters into "totalization agreements" with foreign nations to rectify such matters.  Oral Arg. at 23:59-26:08, *available at* http://www.cafc.uscourts.gov/oral-argument-recordings/all/zhang.html.  According to the government, any totalization agreement applicable to the Zhang plaintiffs would be a matter of foreign policy distinct from the terms of the Covenant.  *Id.*

government urged that the term "excise" in § 606(b) should not be read so narrowly as to exclude the FICA employee tax. Oral Arg. at 18:10-21:21, 27:23-28:55, *available at* http://www.cafc.uscourts.gov/oral-argument-recordings/all/zhang.html. The government suggested that § 606(b) "may have been drafted in an inartful manner," *id.* at 28:50, and argued that § 606(b) used the term "excise" loosely to refer to FICA employment taxes generally—*i.e.*, both the employee and employer FICA taxes on wages.

In its rebuttal argument, Appellants disputed the government's broad reading of the term "excise" in § 606(b) and argued that only the employer FICA tax is routinely referred to as the excise tax. Oral Arg. at 29:04-30:20. Moreover, Appellants argued, "there is nothing to suggest that Congress was rephrasing customary tax language" by using the term "excise" to refer to both the employee and the employer FICA taxes. *Id.* Appellants disputed the notion that, even though the statute providing for the employer tax, I.R.C. § 3111, uses the term "excise," whereas the statute providing for the employee FICA tax, I.R.C. § 3101, does not, the employee FICA tax may nevertheless be considered an excise tax.

This appeal presents us with two broad questions. First, we must determine whether FICA, as part of the Internal Revenue Code, generally applies in the CNMI. Second, if FICA applies in the CNMI, then we must decide whether it applies specifically to the Zhang plaintiffs and to Hyunjin.

### A. The Application of FICA to the CNMI

### 1. Whether CNMI is in the "United States" for FICA Purposes

As to the first question, we conclude that the Court of Federal Claims did not legally err in holding that FICA generally applies to the CNMI through the terms of the Covenant. Chapter 21 of Title 26 of the United States Code sets forth the FICA statutory scheme, and § 3121 provides definitions generally applicable to this chapter. *See Abrahamsen v. United States*, 228 F.3d 1360, 1363-64 (Fed. Cir. 2000) (applying definitions of "wages" and "[e]mployment" in I.R.C. § 3121(a)-(b) to FICA). As noted above, § 3121(e)(2) states that "[t]he term 'United States' when used in a geographical sense includes the Commonwealth of Puerto Rico, the Virgin Islands, Guam, and American Samoa."

Insofar as Appellants assert that the CNMI is not explicitly included in the definition of "United States" provided in I.R.C. § 3121(e)(2), they are correct. Our inquiry, however, does not end with the definition provided by the Internal Revenue Code. Covenant § 606(b), codified as a note to the United States Code, requires that "[t]hose laws of the United States which impose excise and self-employment taxes to support or which provide benefits from the United States Social Security System will . . . *become applicable to the Northern Mariana Islands as they apply to Guam*." 48 U.S.C. § 1801 note (emphasis added). Leaving aside for the moment the disputed scope of the term "excise and self-employment taxes," FICA is unquestionably a law that imposes excise taxes to support Social Security. *See, e.g.*, *United States v. Cleveland Indians Baseball Co.*, 532 U.S. 200, 204 (2001) ("The Federal Insurance Contributions Act (FICA) . . . impose[s] excise taxes on employee wages to fund Social Security . . . ."). We therefore must determine whether "United States" is used in FICA in a geographical sense—if so, then, as the Court of Federal Claims concluded, FICA generally applies to the CNMI by way of

I.R.C. § 3121(e), which defines "United States" to include Guam, and Covenant § 606(b), which applies the FICA statutes to the CNMI as they apply to Guam. *Op.* at 278.

To be subject to FICA taxation, a nonresident alien worker must be employed "within the United States." This requirement is apparent from the FICA statutory scheme. Subsections 3101(a) and (b) impose on an employee taxes equal to certain "percentages of the *wages* (as defined in section 3121(a)) received by him with respect to *employment* (as defined in section 3121(b))." I.R.C. §§ 3101(a), (b) (emphases added). Similarly, §§ 3111(a) and (b) impose on an employer taxes equal to certain "percentages of the *wages* (as defined in section 3121(a)) paid by him with respect to *employment* (as defined in section 3121(b))." *Id.* §§ 3111(a), (b) (emphases added). Section 3121(a) defines "wages" as "all remuneration for employment." *Id.* § 3121(a). The term "employment" is defined in section 3121(b), which states that "'employment' means any service, of whatever nature, performed . . . by an employee for the person employing him, irrespective of the citizenship or residence of either, . . . *within the United States*." *Id.* § 3121(b) (emphasis added). Thus, the FICA taxes under §§ 3101 and 3111 apply to "employment" occurring "within the United States."

The parties disagree whether the term "United States" is used "in a geographical sense"—and thus whether "United States" includes Guam in § 3121(b). *Op.* at 277. Appellants assert that "Congress . . . select[ed] citizenship, not geography, as the basis for providing federal social security benefits and imposing supporting taxes." Appellants' Opening Br. at 44-45. The government disagrees, arguing that Congress used "United States" geographically and therefore plainly intended to substitute the CNMI for Guam for FICA purposes. We agree with the government. It is evident from the defini-

tion of "employment" that citizenship is not the basis for applying FICA taxes, because the statute indicates that FICA taxes apply to employment "irrespective of the citizenship" of the employer or employee. I.R.C. § 3121(b). We conclude that the Court of Federal Claims did not legally err in its determination that the FICA statutory scheme uses "United States" in a geographical sense, and that, as a result, the FICA laws generally apply to the CNMI "as they apply to Guam." *Op.* at 277.

### 2. Effect of Congressional Legislation on the Scope of FICA in the CNMI

We next consider Appellants' arguments that two statutes, enacted after the Covenant was approved but before Covenant § 606(b) became effective in 1987, limit the application of FICA taxes through the Covenant. The two statutes at issue are 42 U.S.C. § 1301 and the 1983 Act. We, like the Court of Federal Claims, *Op.* at 282-86, reject Appellants' arguments.

With regard to 42 U.S.C. § 1301, the general definitions section of the Social Security Act, Appellants contend that Congress's amendments to this statute in 1981 altered Appellants' obligation to pay FICA taxes. Specifically, Appellants point to the fact that Congress amended the definition of "State" in § 1301(a)(1) to include the CNMI with regard to some, but not all, Social Security benefit laws. According to Appellants, these amendments demonstrate that Congress intended to treat Guam and the CNMI differently for some programs and the same for others. Thus, Appellants contend, it is improper to mechanically substitute "CNMI" for "Guam" in Covenant § 606(b).

As drafted, the terms of the Covenant expressly provide for substitution of Guam for the CNMI for tax purposes. *See, e.g.*, Covenant §§ 601(c), 606(b). Contrary to

Appellants' arguments, Congress did not subsequently abandon the substitution of Guam for the CNMI by enacting 42 U.S.C. § 1301. Appellants correctly point out that § 1301(a)(1) defines the term "State" differently for Guam and the CNMI for certain provisions of the Social Security Act. However, § 1301 does not refer to the Covenant or to FICA taxation. Appellants' argument is in essence an assertion that § 1301 repealed by implication express terms of the Covenant, including the application of FICA to the CNMI.

Construing a statute as a repeal by implication is generally disfavored, *Riggin v. Office of Senate Fair Emp't Practices*, 61 F.3d 1563, 1566 (Fed. Cir. 1995), and "'where two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective,'" *Cathedral Candle Co. v. U.S. Int'l Trade Comm'n*, 400 F.3d 1352, 1365 (Fed. Cir. 2005) (quoting *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1018 (1984)). Because Appellants have not identified a "clearly expressed congressional intention" to alter the substitution of the CNMI for Guam in the Covenant, we conclude that the amendments to 42 U.S.C. § 1301 are not pertinent to FICA tax policy in the CNMI.

With regard to the 1983 Act, Appellants argue that this statute limits FICA taxation in the CNMI. Specifically, Appellants assert that § 19 of the 1983 Act excludes CNMI aliens from participating in, and paying taxes to support, federal benefits programs conditioned upon United States citizenship. The Court of Federal Claims concluded that this argument lacks merit, *Op.* at 286, and we agree.

Section 19 of the 1983 Act provides that:

(a) The President may . . . by proclamation provide that the *requirement of United States citizenship or nationality* provided for in any of the statutes listed on pages 63-74 of the [First Interim Report] shall not be applicable to the *citizens of the Northern Mariana Islands. . . .*

(b) A statute which denies a benefit or imposes a burden or a disability on an *alien*, his dependents, or his survivors shall, *for the purposes of this Act*, be considered to impose a *requirement of United States citizenship or nationality.*

1983 Act § 19, 97 Stat. at 1464 (emphases added). According to Appellants, § 19 confirms Congress's intent to limit social security benefits under Covenant § 606 to CNMI domiciliaries and to exclude aliens not entitled to United States citizenship. In essence, Appellants read § 19(a) and (b) as wholly independent provisions; the former enables CNMI citizens to enjoy federal benefits, whereas the latter excludes all aliens, *i.e.*, nonimmigrants, in the CNMI from both the benefits and burdens of those social security laws for which United States citizenship is a condition to receipt.

Unlike Appellants, the government views § 19(a) and (b) as bound by a common objective: to accelerate CNMI citizens' receipt of certain statutory benefits to which they otherwise would not have been entitled until termination of the Trusteeship Agreement. According to the government, § 19(b) serves to clarify the scope of the phrase "requirement of United States citizenship or nationality" in § 19(a), by specifying that "[a] statute which denies a benefit or imposes a burden . . . on an alien" shall be considered to impose a requirement of United States citizenship or nationality. The government therefore understands "alien" in § 19(b) to refer back to the "citizens

of the Northern Mariana Islands" specified in § 19(a).  Put differently, the government interprets "aliens" in § 19(b) from the perspective of the United States (*i.e.*, as including CNMI citizens), whereas Appellants interpret the same phrase from the perspective of the CNMI (*i.e.*, as referring to non-CNMI citizens, including nonimmigrant contract workers such as the Zhang plaintiffs).

We view the government's interpretation of § 19(b) as more faithful to the statutory text as a whole.  Section 19(b) of the 1983 Act cannot be construed in isolation.  *See Hawkins v. United States*, 469 F.3d 993, 1001 (Fed. Cir. 2006) ("[W]e must follow the cardinal rule that statutory language must be read in context since a phrase gathers meaning from the words around it." (internal quotation marks omitted)).  In the context of the 1983 Act, § 19(a) refers to the "requirement of United States citizenship or nationality," and § 19(b) clarifies how this phrase is to be understood "for the purposes of this Act." Section 19 as a whole is thus limited to "the statutes listed on pages 63-74 of the Interim Report," which do not encompass FICA.[8]  1983 Act § 19(a).  In context, the term "alien" in § 19(b) refers to CNMI citizens and residents who were not yet United States citizens and were treated as "aliens" under the statutes enumerated in § 19(a).[9]

---

[8]  The only provision relating to Social Security among the statutes listed in § 19(a) is 42 U.S.C. § 402(t), which proscribes the payment of certain Social Security benefits to aliens who are outside the United States. Section 402(t) does not involve FICA taxation.

[9]  Section 20 of the 1983 Act further supports this construction.  The proclamation that the President may issue pursuant to § 19 is "subject to the provisions of section 20 of this Act"; thus, § 20 clarifies the scope and purpose of § 19:

> (b)  When issuing such proclamation or proclamations the President–,  (1) shall take into

To the extent that the parties' disagreements reveal an ambiguity as to the meaning of "alien" in § 19(b), the purpose of § 19 of the 1983 Act makes it clear that the government's interpretation is the correct one. Covenant § 504, as noted above, created a Commission on Federal Laws to recommend to Congress which federal laws should be made applicable to the CNMI, and to what extent and in what manner this should be accomplished. The Commission published its First Interim Report in January 1982, which recommended that Congress enact legislation "to extend certain statutory rights and privileges of U.S. citizenship to the citizens of the Northern Mariana Islands prior to their becoming citizens of the United States." First Interim Report, *supra*, at 4. As the First Interim Report explained:

> *In general.* Many federal laws require United States citizenship as a prerequisite to enjoyment of rights and privileges conferred by those laws. Citizens of the Northern Mariana Islands are not now citizens of the United States.
>
> On full implementation of the Covenant, however, they will become citizens of the United States. At that time they will no longer be denied these rights and privileges on citizenship grounds.
>
> Only until implementation of the Covenant, then, is legislation necessary for *citizens of the Northern Mariana Islands* to be treated as citi-

> account: (i) the hardship suffered by *the citizens of the Northern Mariana Islands* resulting from the fact that, while they are subject to most of the laws of the United States, they are denied the benefit of those laws which contain a *requirement of United States citizenship or nationality*; . . . .

§ 20(b), 97 Stat. at 1464 (emphases added).

zens of the United States for purposes of these Statutes. . . .

. . . The date for termination of the trusteeship is not yet known. During the possibly-lengthy period between now and the end of the trusteeship, no sound reason for denying *citizens of the Northern Mariana Islands* access to the rights and privileges provided by these statutes is apparent. *Removal of these citizenship barriers should ease the integration of the Northern Mariana Islands into the American political family*.

*Id.* at 4-6 (emphases added; internal footnote and citation omitted). To "ease the integration" of CNMI citizens, *id.* at 6, the Report recommended that Congress enact legislation that would treat CNMI citizens as United States citizens for certain listed statutes; proposed legislative language was provided in the Report, *id.* at 63-75. Congress enacted such legislation, with reference to pages 63-74 of the First Interim Report, as § 19 of the 1983 Act. *Op.* at 284.

The purpose of § 19 of the 1983 Act was to remove the citizenship barriers for CNMI citizens until the Trusteeship Agreement was terminated and the Covenant was fully implemented, at which time CNMI citizens would become United States citizens. Construing "alien" in § 19(b) to refer to the CNMI citizens referenced in § 19(a) comports with this objective. Construing this term to refer generally to nonresident aliens does not. As the Court of Federal Claims correctly stated, "[t]he 1983 Act has nothing do to with the applicability of Social Security laws to non-resident aliens in general, nor can plaintiffs extract from its legislative history the slightest evidence

that Congress was concerned with the plight of foreign temporary contract workers in the CNMI." *Op.* at 285.

Accordingly, we conclude that neither 42 U.S.C. § 1301 nor the 1983 Act alters the general application of FICA to the CNMI.[10]

## B. Whether FICA Applies to the Zhang Plaintiffs and to Hyunjin

Having concluded that FICA applies generally to the CNMI, we turn to the question whether FICA taxes are owed by Appellants. Appellants here consist of a CNMI employer (Hyunjin) and several of its nonimmigrant alien contract employees (the Zhang plaintiffs). FICA provides for an employer tax and an employee tax, and we must determine whether these FICA provisions apply to Appellants. As we shall explain, we conclude that the FICA taxation scheme applies to both Hyunjin and to the Zhang plaintiffs, and that, as a result, Appellants are not entitled to a refund of their FICA taxes.

### 1. Application of FICA to the Zhang Plaintiffs

We first consider the employees, the Zhang plaintiffs. Our analysis starts with Covenant § 606(b), which, according to the decision of the Court of Federal Claims, applies the FICA tax on employee wages to employees working in the CNMI. *Op.* at 281. As noted above, § 606(b) applies to the CNMI "[t]hose laws of the United States which impose *excise and self-employment taxes* to

---

[10] Appellants also contend that Congress's failure to amend I.R.C. § 3121(e)(2)—FICA's definition of the term "United States"—to include the CNMI is evidence that Guam should not be substituted for the CNMI with regard to FICA taxation. We reject this argument. Any such amendment would have been unnecessary because, as explained *supra*, the terms of the Covenant apply FICA to the CNMI via Guam.

support or which provide benefits from the United States Social Security System."  Covenant § 606(b) (emphasis added).  The term "self-employment taxes" in § 606(b) refers to the SECA tax.  *Op.* at 271.  The dispute here centers on the meaning of "excise . . . taxes."

The government presents alternative arguments as to why § 606(b) includes the employee FICA tax.  Before the Court of Federal Claims, the government argued that even though "excise" in Covenant § 606(b) refers explicitly only to the FICA employer tax, § 606(b) should be construed to encompass, albeit implicitly, the FICA employee tax as well.  The Court of Federal Claims agreed with the government on this point.  *Op.* at 271 ("On its face, section 606(b) seems to apply only the FICA excise tax on employers (I.R.C. § 3111) and the [SECA tax] and omits the FICA tax on employees (I.R.C. § 3101).").  The government maintained this position in its appellate brief. Appellee Br. at 37-50.

At oral argument before this court, however, the government asserted that the term "excise" in § 606(b) refers broadly to both the employer *and* employee FICA taxes. While we often treat untimely arguments as waived, *e.g.*, *United States v. Ford Motor Co.*, 463 F.3d 1267, 1276-77 (Fed. Cir. 2006), we retain case-by-case discretion over whether to apply waiver, *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1251 (Fed. Cir. 2005).[11]  We exercise our

---

[11]  We have in the past considered arguments raised for the first time during oral argument.  *See, e.g.*, *Housey Pharms., Inc. v. Astrazeneca UK Ltd.*, 366 F.3d 1348, 1353 (Fed. Cir. 2004) (choosing to consider dictionary definitions introduced for the first time at oral argument on appeal); *James v. Santella*, 328 F.3d 1374, 1383-84 (Fed. Cir. 2003) (noting that, "[w]hile we typically do not address issues that are raised for the first time at oral argument, we choose to do so here").

discretion in this case to consider the government's argument.

We find it reasonable to conclude that "excise" in Covenant § 606(b) refers to both the employee and employer FICA taxes. Because the Internal Revenue Code does not define the term "excise," we assume that the term has its ordinary meaning, for which we may consult dictionaries. *See Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1320 (Fed. Cir. 2003). The dictionary definition of "excise" supports a broad construction. The fifth edition of *Black's*—the most recent edition available when the entire Covenant, including § 606, became effective—defines "excise" as "[a] tax imposed on the performance of an act, *the engaging in an occupation*, or the enjoyment of a privilege." *Black's Law Dictionary* 506 (5th ed. 1979) (emphasis added). This edition of *Black's* further clarified: "In current usage the term has been extended to include various license fees and *practically every internal revenue tax except the income tax*." *Id.* (emphasis added). The FICA tax, a tax on employment, fits this definition.[12],[13]

---

[12]  We note that Covenant § 604 refers to "excise taxes on goods manufactured, sold or used or services rendered," corroborating the broad meaning and use of the term "excise" in the Covenant.

[13]  Current legal dictionaries also define "excise" broadly. The most recent edition of *Black's* defines "excise" as "[a] tax imposed on the manufacture, sale, or use of goods (such as a cigarette tax), or on an occupation or activity (such as a license tax or an attorney occupation fee)." *Black's Law Dictionary* 646 (9th ed. 2009). The entry for "excise taxes" in *West's Tax Law Dictionary* states: "May be applied to most taxes except income tax or property tax. In general, the term means a tax on the manufacture, sale, or use of goods or with respect to an occupation or activity." *West's Tax Law Dictionary*, 375-

In addition, courts have used the term "excise" broadly to encompass both the employee and employer FICA taxes. For example, in *United States v. Fior D'Italia, Inc.*, the Supreme Court explained that "[t]he tax law imposes, not only on employees, but also 'on every employer,' an 'excise tax,' *i.e.*, a FICA tax." 536 U.S. 238, 240 (2002) (quoting I.R.C. § 3111); *see also Cleveland Indians Baseball*, 532 U.S. at 204 ("The Federal Insurance Contributions Act (FICA) . . . impose[s] excise taxes on employee wages . . . ."). Circuit courts, including this court, have also characterized the FICA employee tax as an excise tax. In *Chicago Milwaukee Corp. v. United States*, a case involving the Railroad Retirement Tax Act ("RRTA"), we stated, "RRTA tax is similar to the tax imposed by [FICA]. RRTA tax is an employment excise tax on the employer and the employee." 40 F.3d 373, 374 (Fed. Cir. 1994). The Tenth Circuit summarized the FICA tax scheme as follows:

> The federal Social Security and Medicare systems are funded by excise taxes, separate and distinct from federal income taxes, imposed on employees, employers, and self-employed individuals. *See* 26 U.S.C. §§ 1401, 3101, 3111. In the case of employees and employers, FICA imposes the excise tax on the "wages" paid by an employer to an employee with respect to "employment." *See* 26 U.S.C. § 3101(a)-(b), § 3111(a)-(b). FICA taxes are paid in equal shares by employer and employee. *See id.*

*Pub. Emps. Ret. Bd. v. Shalala*, 153 F.3d 1160, 1161 (10th Cir. 1998). The Second Circuit has also characterized both the employee and employer FICA taxes as excise

---

76 (Robert Sellers Smith & Adele Turgeon Smith eds., 2010).

taxes: "[The plaintiff] is an employer which is obligated under the FICA statutory scheme to pay an excise tax on the wages it pays its employees and to withhold from those wages and pay to the Government an excise tax imposed on its employees." *Atl. Dept. Stores, Inc. v. United States*, 557 F.2d 957, 958 (2d Cir. 1977).

Accordingly, based on the plain meaning of the term "excise," as well as various judicial interpretations affording the term a broad scope vis-à-vis the FICA taxation scheme, and in light of the absence of a specific definition for "excise" in the Internal Revenue Code, we agree with the government that it is reasonable to interpret the term "excise . . . taxes," as used in Covenant § 606(b), to include both the employee and employer FICA taxes under 26 U.S.C. §§ 3101 and 3111.

That is not to say, however, that a narrower reading of "excise" is necessarily unreasonable. Section 3111 of the Internal Revenue code refers to the employer FICA tax as an "excise" tax, whereas § 3101 does not use this descriptor in referring to the employee tax. Moreover, the Court of Claims has referred, in passing, to the employee FICA tax as an income tax, not an excise tax. In *Kirkconnell v. United States*, a case in which employers, as plaintiffs, sued for certain tax refunds, the court stated: "Only that portion of the FICA taxes, an excise tax paid by plaintiffs, is sought to be refunded. No part of the [employees'] FICA taxes, an income tax, is sought to be refunded here." 347 F.2d 260, 261 (Ct. Cl. 1965). As the nature of the employee FICA tax was not at issue in that case, its notation of that tax as an income tax, not as an excise tax, does not bind us here. Nevertheless, Appellants' interpretation of "excise," which limits the excise taxes in § 606(b) to the employer FICA tax, is not unreasonable.

Confronted with a textual ambiguity arising from "[l]ess-than-meticulous drafting," *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 53 (2004), we may refer to legislative history for assistance in resolving the ambiguity, *id.* at 62; *see also Diamond v. Chakrabarty*, 447 U.S. 303, 315 (1980) ("[O]ur obligation is to take statutes as we find them, guided, if ambiguity appears, by the legislative history and statutory purpose."); *Nutrition 21 v. United States*, 930 F.2d 862, 865 (Fed. Cir. 1991) ("Where . . . the words of a statute are not expressly defined, and do not fairly admit of a plain, non-ambiguous meaning, resort to the legislative history for clarification is justified."). Here, with two plausible, yet conflicting, interpretations of Covenant § 606(b), we turn to the relevant legislative history for clarification.

Several extrinsic sources shed light on the meaning of the Covenant. The House and Senate Reports prepared in connection with Congress's approval of the Covenant both state: "Subsection (b) [of Covenant § 606] assures that the laws of the United States which impose taxes to support . . . the United States Social Security System will become applicable to the Northern Marianas as they are applicable to Guam upon termination of the Trusteeship [Agreement] . . . ." H.R. Rep. No. 94-364, at 11 (1975); S. Rep. No. 94-433, at 83 (1975). Also informative is the Section by Section Analysis of the Covenant To Establish a Commonwealth of the Northern Mariana Islands (hereinafter, "Section-by-Section Analysis"), which was published by the Marianas Political Status Commission, the drafters of the Covenant. *Op.* at 273. The portion of the Section-by-Section Analysis describing Covenant § 606(b) states:

> Subsection (b) [of § 606] assures that the laws of the United States which impose taxes to support or which provide benefits from the United

> States Social Security System will become applicable to the Northern Marianas as they are applicable to Guam upon termination of the Trusteeship Agreement . . . . At this time as well, those laws of the United States which impose taxes to support the United States Social Security System will become applicable. The reason that the Covenant is structured in a way which does not make the United States social security laws applicable immediately is that the taxes which are imposed to support the social security system are very burdensome as compared to the taxes which are paid by the people of the Northern Marianas today. . . . [T]hese laws will become effective in the Northern Marianas no later than termination of the Trusteeship, at which time the entire Covenant will be effective.

Section-by-Section Analysis, *supra*, at 80-81.

Finally, the Second Interim Report contains the perspective of the Commission on Federal Laws. *Op.* at 280 n.12. The summary section of the Report states: "Employers *and employees* in the Northern Mariana Islands are made subject to taxes imposed by the Federal Insurance Contributions Act to support the federal social security system at the time the social security systems of the Northern Mariana Islands and the United States are merged . . . ." Second Interim Report, *supra*, at 415 (emphasis added). In the section of the Report titled "Employment Taxes," under the heading "The Federal Insurance Contributions Act," the Report describes the FICA taxation scheme as "impos[ing] wage-based taxes on employers *and employees* to support . . . social security." *Id.* at 465 (emphasis added). The Report then explains that, under FICA, "[t]he employer *and employee* are each required to pay taxes." *Id.* (emphasis added). The Report

states that "[s]elf-employed persons are *also* obliged to contribute to the social security system through a tax on self-employment income." *Id.* at 466 (emphasis added). The FICA section of the Report concludes:

> At the time these taxes become effective, the social security system of the Northern Mariana Islands is merged into the federal system, and persons in the Northern Mariana Islands become eligible for federal social security benefits *based on their contributions* into either the Northern Mariana Islands or the federal system.

*Id.* (emphasis added).

Appellants concede that the Senate Report "does make clear that Congress anticipated that social security benefits and FICA taxes would be applied in some form and to some extent in the CNMI." Appellants' Opening Br. at 33. However, Appellants contend that the manner and extent to which FICA would apply to the CNMI was unsettled as of the date the Covenant was approved. Appellants also take issue with the court's consideration of the Section-by-Section Analysis and the Second Interim Report, which Appellants contend are improper sources of legislative history.[14]

The government argues in response that the legislative history confirms that Congress intended for the FICA tax provisions to apply to CNMI employees. The government notes that the reports draw no distinction among the types of FICA taxes. According to the government, that indicates that "all entities with relevant roles in the

_____

[14] Appellants further contend that these documents are not probative of Congress's intent to apply FICA to the CNMI via the definition of "United States" in 26 U.S.C. § 3121(e). As discussed *supra*, we hold that the CNMI is within the "United States" for FICA purposes.

legislative process appear to have believed that the Covenant's terms were meant to impose FICA taxes on CNMI employees, and did so." Appellee Br. at 47.

We conclude that the relevant legislative history demonstrates that Congress intended to apply both the employee and employer FICA taxes to the CNMI through Covenant § 606(b). The House and Senate Reports accompanying the Covenant state that § 606(b) applies "the laws" that impose taxes to support the social security system to the CNMI. H.R. Rep. No. 94-364, at 11; S. Rep. No. 94-433, at 83. The reports do not distinguish the employer FICA tax from the employee FICA tax, nor do they suggest that one tax applies but the other does not. This is wholly consistent with the view that "excise . . . taxes" in § 606(b) is used broadly to encompass both types of FICA taxes. These documents are also consistent with the government's assertion (unchallenged by Appellants) that Congress has never selectively applied certain components of the FICA scheme without applying others. Appellee Br. at 24. Based on the House and Senate Reports, we conclude that Congress did not intend for § 606(b) to exempt CNMI employees from FICA taxation, and therefore intended for the term "excise . . . taxes" to include taxation under both I.R.C. §§ 3101 and 3111.

Our conclusion is confirmed by the other documents reviewed by the Court of Federal Claims. The Section-by-Section Analysis of the Marianas Political Status Commission similarly refers to application of "the laws" that support the social security system, without suggesting any intent to except the employee FICA tax. That is not without significance. Congress considered the Section-by-Section Analysis prior to approving the Covenant. *See* S. Rep. No. 94-433, at 65-94. Moreover, the United States Court of Appeals for the Ninth Circuit looks to the Section-by-Section Analysis to discern the meaning of the

Covenant in cases involving the CNMI (over which the Ninth Circuit has jurisdiction). *N. Mar. I. v. United States*, 399 F.3d 1057, 1065 (9th Cir. 2005) ("We have relied in previous opinions on the Marianas Political Status Commission's authoritative Section-by-Section Analysis of the Covenant to assist us in discerning the meaning of the Covenant." (internal quotation marks omitted)); *see also Fleming v. Dep't of Public Safety*, 837 F.2d 401, 408 (9th Cir. 1988) (referring to the Section-by-Section analysis as "persuasive evidence" of the meaning of a particular aspect of the Covenant), *overruled on other grounds by DeNieva v. Reyes*, 966 F.2d 480, 483 (9th Cir. 1992). The Second Interim Report is equally clear regarding the scope of § 606(b). As with the other extrinsic sources, the Report does not provide any indication that the Covenant excludes the FICA tax on employee wages.

Thus, taken together, the extrinsic evidence confirms that the term "excise . . . taxes" in § 606(b) should be given its broad meaning as including the FICA tax on employee wages.[15] Because we conclude that the FICA employee wage tax is applied to the CNMI via Covenant § 606(b), we need not reach the government's alternative arguments (which were rejected by the Court of Federal Claims, *Op.* at 279), that the FICA tax on employee wages applies to the CNMI via Covenant §§ 502(a)(2) or 601(c).

In addition, we reject Appellants' argument that the scope of § 606(b) is limited by §§ 606(a) and (c) such that § 606(b) applies only to CNMI citizens or domiciliaries. As the government acknowledges, §§ 606(a) and (c) involve management of contributions to the Trust Territory Social Security Retirement Fund, in which only CNMI citizens and domiciliaries participated. Yet this fact does

---

[15] In so concluding, we do not rely on the "absurd result" rationale of the Court of Federal Claims. *Op.* at 279.

not compel the strained interpretation of § 606(b) that Appellants urge. Unlike §§ 606(a) and (c), § 606(b) does not involve the Trust Territory Social Security Retirement Fund. Nothing in the text of § 606(b) limits this subsection to CNMI citizens or domiciliaries.

The structure of § 606 is equally unsupportive of Appellants' proposed construction. Appellants suggest that, because § 606(b) is located between two provisions dealing with the Trust Territory Social Security Retirement Fund, § 606(b) must be limited, implicitly, to those individuals who participated in that Fund. On the contrary, the organization of § 606 reflects the sequential timing of the particular subsections: § 606(a) sets forth a procedure for handling the Fund "at the time this Covenant is approved" but before § 606(b)'s effective date; § 606(b) applies certain federal excise and self-employment taxes to the CNMI "following the termination of the Trusteeship Agreement"; and § 606(c) directs the transfer of the Northern Mariana Islands Social Security Retirement Fund "[a]t such time as the laws described in Subsection (b) become applicable to the Northern Mariana Islands." Neither the text nor the structure of § 606 supports Appellants' argument for excluding the Zhang plaintiffs, as nonimmigrant alien contract workers, from the scope of Covenant § 606(b).

Accordingly, the Zhang plaintiffs are not entitled to a refund of their FICA taxes, all of which were paid after § 606(b) went into effect. *Op.* at 287. The Court of Federal Claims correctly granted the government's motion for judgment on the pleadings as to the Zhang plaintiffs.

### 2. Application of FICA to Hyunjin

We turn finally to Hyunjin, the employer. Appellants' brief does not explain in detail why the FICA tax on employers' wages under I.R.C. § 3111 does not apply to

Hyunjin, other than to allege that, because Hyunjin's employees do not owe FICA taxes on their hourly wages, neither does Hyunjin owe FICA taxes on wages paid to its employees. This argument fails because, as we explained above, the Zhang plaintiffs and similarly situated non-immigrant alien contract workers in the CNMI owe FICA taxes under the Covenant.

The parties do not dispute that, as drafted, § 606(b) imposes FICA taxes on employers in the CNMI. *Op.* at 287. Section 606(b) of the Covenant applies to the CNMI "[t]hose laws of the United States which impose excise . . . taxes to support . . . the United States Social Security System." Covenant § 606(b). The FICA employer wage tax unquestionably fits this definition; § 3111 explicitly characterizes the FICA employer tax as "an excise tax" (consistent with this term's broad definition), and FICA taxes are imposed to support the Social Security system. We concluded above that the CNMI is within the "United States" for purposes of FICA taxation, and that subsequent legislation by Congress did not alter the scope of FICA taxation under the Covenant. Thus, § 606(b) of the Covenant applies the employer FICA tax to Hyunjin, as a CNMI employer.

Accordingly, Hyunjin is not entitled to a refund of its FICA taxes, all of which were paid after § 606(b) came into effect. *Op.* at 287. The Court of Federal Claims correctly granted the government's motion for judgment on the pleadings as to Hyunjin.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the United States Court of Federal Claims granting the government's motion for judgment on the pleadings.

## AFFIRMED