

**FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| FANG LIN AI and DOES 1-1000, | No. 13-17491 |
| Plaintiffs - Appellants, | D.C. No. 1:11-cv-00014 |
| CONCORDE GARMENT MANUFACTURING CORPORATION, | OPINION |
| Plaintiff-counter-defendant - Appellant, | |
| v. | |
| UNITED STATES OF AMERICA, | |
| Defendant-counter-claimant - Appellee. | |

Appeal from the United States District Court
for the District of the Northern Mariana Islands
Ramona V. Manglona, Chief District Judge, Presiding

Argued and Submitted June 10, 2015
Honolulu, Hawaii

Before: WARDLAW, BERZON, and OWENS, Circuit Judges.

Opinion by Judge WARDLAW, Circuit Judge:

Concorde Garment Manufacturing Corporation, and more than 4,000

temporary, nonresident former employees of Concorde, appeal from the district

court's entry of judgment on the pleadings in favor of the United States.[1]  The district court held that temporary foreign workers in the Commonwealth of the Northern Mariana Islands ("CNMI") and their employers are required to pay Federal Insurance Contributions Act ("FICA") taxes, which fund Social Security and Medicare.  Section 606(b) of the Covenant governing U.S.-CNMI relations provides that U.S. laws that impose excise taxes to support the Social Security system apply to the CNMI as they apply to Guam.[2]  Because FICA is a law that imposes an excise tax to support the Social Security system, it applies to the CNMI as it applies to Guam.  In turn, FICA applies to all workers and their employers in Guam, regardless of their citizenship.  Therefore, FICA also applies to all workers and their employers in the CNMI, including Appellants, regardless of their citizenship.  We therefore affirm the district court.

---

[1]  The district court also entered summary judgment in favor of the United States on Appellants' claim for illegal levy.  Appellants do not appeal this decision.

[2] The Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America ("Covenant") was entered into U.S. law pursuant to Pub. L. No. 94-241, 90 Stat. 263 (1976), and is codified as a note following 48 U.S.C. § 1801.  Several of our opinions have detailed the history of the Covenant and U.S.-CNMI relations.  *See, e.g.*, *N. Mariana Islands v. United States*, 399 F.3d 1057, 1058–60 (9th Cir. 2005); *Saipan Stevedore Co. v. Dir., Office of Workers' Comp. Programs*, 133 F.3d 717, 720–21 (9th Cir. 1998).

## I.  Background

Appellants Concorde Garment Manufacturing Corporation ("Concorde") and the Chinese national, nonresident workers formerly employed at Concorde's facilities in the CNMI ("Employees") paid FICA taxes from the years 2004 to 2007.  In 2008, Appellants filed refund claims for those payments.  The Internal Revenue Service ("IRS") refunded Concorde's 2006 FICA taxes but otherwise took no action on Appellants' claims.  Thereafter, Appellants sued the United States in the U.S. District Court for the Northern Mariana Islands to recover the remainder of the FICA taxes they had paid.  The United States counter-claimed to recover the refund of Concorde's 2006 FICA taxes, which it argued was erroneously issued.  The district court ruled that all workers and their employers in the CNMI are subject to FICA, regardless of the citizenship of either.

Appellants timely filed this appeal, arguing that (1) the Covenant was intended to subject only CNMI citizens, not temporary nonresident foreign workers, to FICA taxes; (2) even if FICA generally applies to all workers and their employers in the CNMI, Employees are entitled to the FICA tax exemption for temporary nonresident Filipino workers in Guam; (3) even if the first two arguments are rejected, the employee portion of FICA does not apply because it is an income tax, and only excise and self-employment taxes that support Social

3

Security apply to the CNMI; and (4) the statutory basis for applying FICA to Appellants is unconstitutionally vague.[3]

## II. Standard of Review

We review de novo an order granting judgment on the pleadings, accepting facts alleged by the nonmoving party as true and drawing all inferences in its favor. *LeGras v. AETNA Life Ins. Co.*, 786 F.3d 1233, 1236 (9th Cir. 2015). We also review de novo underlying issues of statutory interpretation and constitutionality. *Fournier v. Sebelius*, 718 F.3d 1110, 1117–18 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 1501 (2014).

We have held that "taxing statute[s] must be construed most strongly in favor of the taxpayer and against the government." *Greyhound Corp. v. United States*, 495 F.2d 863, 869 (9th Cir. 1974). However, "[w]e are not impressed by the argument that [any doubtful question] should be resolved in favor of the taxpayer." *White v. United States*, 305 U.S. 281, 292 (1938). Thus, "where the rights of suitors turn on the construction of a [tax] statute . . . it is our duty to decide what that construction fairly should be," and "doubts which may arise upon

---

[3] Appellants adopted the arguments made in *American Pacific Textile, Inc. v. United States*, No. 13-16348. We therefore address those arguments here and resolve issues specific to the *American Pacific* appeal in a concurrently filed memorandum disposition.

a cursory examination of [tax statutes may] disappear when they are read, as they must be, with every other material part of the statute, and in the light of their legislative history." *Id.* (citation omitted); *see also Irwin v. Gavit*, 268 U.S. 161, 168 (1925) ("It is said that the tax laws should be construed favorably for the taxpayers. But that is not a reason for creating a doubt or for exaggerating one when it is no greater than we can bring ourselves to feel in this case.").

Therefore, while tax statutes "are not to be extended by implication beyond the clear import of the language used," *United States v. Merriam*, 263 U.S. 179, 187–88 (1923), we do not mechanically resolve doubts in favor of the taxpayer but instead resort to the ordinary tools of statutory interpretation. Ultimately, "the literal meaning of the words employed is most important."[4] *Id.*; *see also United States v. Fei Ye,* 436 F.3d 1117, 1120 (9th Cir. 2006) ("If the plain language of a statute renders its meaning reasonably clear, [we] will not investigate further unless

---

[4] Appellants view the Covenant as a statute. At the same time, Appellants adopt arguments made by the *American Pacific* appellants that depend, somewhat contradictorily, on interpreting the Covenant not as a statute but instead as a treaty-like agreement. Appellants therefore urge us to look more liberally to the Covenant's drafting history than we might in construing a statute. *See Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172, 202 (1999) ("[R]eview of the history and the negotiations of the agreements is central to the interpretation of treaties."). We believe that the Covenant is best viewed as "a congressionally approved compact [that] is both a contract and a statute . . . . [such that] resort to extrinsic evidence of the [Covenant's] negotiations . . . is entirely appropriate." *Oklahoma v. New Mexico*, 501 U.S. 221, 235 n.5 (1991).

its application leads to unreasonable or impracticable results.") (internal quotation marks and citation omitted); *N. Mariana Islands v. United States*, 279 F.3d 1070, 1074 n.5 (9th Cir. 2002) ("We would be undermining congressional intent if we were to decline to give effect to what section 502(a)(2) of the Covenant by its terms requires . . . .").

We note that the Federal Circuit has ruled in favor of the government and against the taxpayers in a materially indistinguishable case, a decision which is persuasive, though not dispositive. *See Zhang v. United States*, 640 F.3d 1358 (Fed. Cir. 2011) (*Zhang II*), *cert. denied*, 132 S. Ct. 2375 (2012).[5] We have recognized, however, that "'[u]niformity among Circuits is especially important in tax cases to ensure equal and certain administration of the tax system.'" *Hill v. Comm'r*, 204 F.3d 1214, 1217 (9th Cir. 2000) (quoting *Pac. First Fed. Sav. Bank v. Comm'r*, 961 F.2d 800, 803 (9th Cir. 1992)). That is particularly true where, as here, a circuit split would create two mutually exclusive rules applicable to the CNMI, leading to uncertainty and obvious forum shopping opportunities.

---

[5] In *Zhang II*, the Federal Circuit reviewed and ultimately affirmed a thorough opinion by the Court of Federal Claims addressing the same issue. *See Zhang v. United States*, 89 Fed. Cl. 263 (2009) (*Zhang I*).

## III. Discussion

*A.  The CNMI Is "Within the United States" for Purposes of FICA.*

1.  Covenant § 606(b)

FICA imposes an employer and an employee tax on wages "with respect to employment."  *See* 26 U.S.C. §§ 3101(a) ("employee tax"), 3111(a) ("employer tax").  FICA applies to wages related to work performed "within the United States," "irrespective of the citizenship or residence of either" the employee or employer, *id.* § 3121(b), and to wages related to work performed "outside the United States" by a U.S. citizen or resident "as an employee for an American employer," *id.*  Section 3121(e)(2) defines the term "United States" when it is used in a geographical sense to include the Commonwealth of Puerto Rico, the Virgin Islands, Guam, and American Samoa.[6]  Thus, wages for services performed in Guam are subject to both the employee and employer provisions of FICA, "irrespective of the citizenship or residence of either" the employee or the employer.  *Id.* § 3121(b).

Section 606(b) of the Covenant, in turn, provides:

---

[6] "United States" is used in a geographical sense in 26 U.S.C. § 3121(b). This is evident from the section's juxtaposition of "*within* the United States," *id.* (emphasis added), and "*outside* the United States," *id.* (emphasis added). Accordingly, it is undisputed that Guam is "within the United States" for purposes of FICA.  *See Zhang II*, 640 F.3d at 1367.

7

> Those laws of the United States which impose excise and self-employment taxes to support or which provide benefits from the United States Social Security System will upon termination of the Trusteeship Agreement or such earlier date as may be agreed to by the Government of the Northern Mariana Islands and the Government of the United States become applicable to the Northern Mariana Islands as they apply to Guam.

Just as in Guam, then, wages for services performed in the CNMI are subject to FICA taxes, irrespective of citizenship or residence. *See id.*; 26 U.S.C. § 3121(b). We hold that the district court correctly held that Appellants, who paid and received wages for services performed in the CNMI, are required to pay FICA taxes on those wages, even though Employees were temporary nonresident Chinese nationals.[7]

2. Covenant § 606(b) is not limited to citizens or residents of Guam or the CNMI.

Appellants attempt to steer us away from this straightforward conclusion, which flows directly from the plain language of Covenant § 606(b), by advocating a citizenship-based application of FICA to the CNMI. They argue that the phrase in Covenant § 606(b) "as they apply to Guam" is ambiguous, and that the term "Guam" does not mean "Guam," but actually means "the people who reside in or

---

[7] We discuss whether the FICA tax on employee wages is "a law[] of the United States which impose[s] excise and self-employment taxes to support . . . the United States Social Security System" in Section III.C.

8

who are citizens of [that] geographic area[].”[8]  From this manufactured ambiguity, Appellants assert that § 606(b)'s reference to the CNMI is also ambiguous and could refer to persons in the CNMI, rather than to the geographic area itself. Appellants then argue that § 606(b) does not refer to all the people in the CNMI, but instead refers only to citizens of the CNMI.  Under this tortured reading of the Covenant, Appellants conclude that § 606(b) subjects only CNMI citizens and their employers to FICA taxes.

There is no plausible method by which to arrive at Appellants' conclusion from the plain language of the Covenant and, were § 606(b) amenable to a citizenship-based application, we would decline to adopt that construction because FICA is incompatible with such an application.

To begin with, § 606(b) does not mention citizenship or people, and we see no reason to read those words into the Covenant.  Moreover, even if we were to read references to geographic areas as references to people in those geographic areas, our reading would not be limited to *citizens*.  The very extrinsic drafting material Appellants rely upon actually suggests the contrary conclusion.  It

---

[8] *See Hearing Before the Subcomm. on Territorial and Insular Affairs of the H. Comm. on Interior and Insular Affairs on H.J. Res. 549, 550, and 547 to Approve the "Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America,"* 94th Cong. 376 (1975).

suggests that references to Guam or to the CNMI could refer either to the geographic areas or "to *the people who reside in* or who are citizens of" those geographic areas. *See* 94th Cong. 376. (emphasis added). Thus, there is no plausible way to limit the applicability of § 606(b)'s cross-reference exclusively to the citizens as opposed to the residents of the CNMI.[9]

Further, to the extent that any ambiguity exists as to whether the cross-reference to Guam refers to people as opposed to geography, the plain language of FICA compels us to adopt the geographic application. By its terms, FICA *never* applies solely based upon a worker's citizenship. Rather, FICA applies in two instances: (1) when work is performed within the United States, and (2) when work is performed by a U.S. citizen for an American employer. *See* 26 U.S.C. § 3121(b). Therefore, unless we construe § 606(b) to include the CNMI within the United States geographically, FICA would not require CNMI citizens to pay FICA taxes unless they were working for an American employer. *See id.* There is no indication that FICA was intended to have such a limited effect within the CNMI. Indeed, because CNMI citizens became U.S. citizens under the

---

[9] And FICA, in turn, applies to the CNMI as it applies to Guam—where nonresident workers are subject to the FICA tax on employee wages because they performed work "within the United States," 26 U.S.C. § 3121(b), regardless of whether they were temporary nonresident workers.

10

Covenant—meaning they already must pay FICA taxes when working for an American employer—such an outcome would render § 606(b) meaningless. *See* Covenant § 303; 26 U.S.C. § 3121(b).[10]  We avoid this result and afford § 606(b) meaning by concluding that, through operation of the cross-reference to Guam, the CNMI is brought within the geographical territory of the United States for purposes of FICA.

3.  Intervening legislation does not preclude § 606(b)'s applicability.

Appellants assert that even if they were subject to FICA pursuant to Covenant § 606(b) as originally drafted, two statutes enacted after the Covenant was approved, but before § 606(b) became effective in 1986, preclude application of FICA to Appellants.  We disagree.

First, Appellants look to a 1981 amendment to 42 U.S.C. § 1301, which altered the definition of the term "State" in the Social Security Act.  In doing so, the amendment extended the application of certain benefit provisions to the CNMI. Critically, from Appellants' perspective, although the amendment expressly

---

[10] There is a third possibility—that § 606(b) somehow expanded the definition of "American employer."  Appellants actually raise this argument, claiming that "CNMI employers—like those of Guam—would be considered 'American employers'" for purposes of applying 26 U.S.C. § 3121(b).  The notion that § 606(b)—which applies FICA to the CNMI as it applies to Guam—is somehow intended narrowly to expand the definition of American employer is nonsensical, and we need not elaborate on this conclusion.

mentioned both the CNMI and Guam, a different menu of benefits was extended to each. *See* 42 U.S.C. § 1301(a)(1) (1982). Appellants assert that this amendment demonstrates Congress's intent to treat Guam and the CNMI differently, and that it is therefore improper to mechanically substitute the CNMI for Guam in Covenant § 606(b).

This argument is without merit, and like the Federal Circuit, we reject it. *See Zhang II*, 640 F.3d at 1368 ("Contrary to Appellants' arguments, Congress did not subsequently abandon the substitution of Guam for the CNMI by enacting 42 U.S.C. § 1301."); *see also Zhang I*, 89 Fed. Cl. at 281–82. Before the amendment to § 1301, Social Security benefits in the CNMI were linked to benefits in Guam pursuant to Covenant § 606(b). The amendment operated to eliminate the benefit parity between the two territories. But there is no indication that Congress intended its amendment to Social Security benefits to extend to FICA taxes. Indeed, far from supporting Appellants' conclusion, that Congress did not amend any taxation provisions when it amended the benefits provisions confirms Congress's intent that FICA taxes remain applicable to the CNMI as to Guam. Thus, the CNMI's FICA tax treatment remains linked to Guam's pursuant to Covenant § 606(b).

Second, Appellants direct us to Section 19 of the Act of 1983, Pub. L. No. 98-213, 97 Stat. 1459. U.S.-CNMI relations were governed by a Trusteeship Agreement following World War II. During the unexpectedly delayed transition from the Trusteeship Agreement to the Covenant, CNMI citizens did not meet the U.S. citizenship requirement included in many statutory benefit provisions.[11] As the Federal Circuit has explained, § 19's purpose was "to accelerate CNMI citizens' receipt of certain statutory benefits to which they otherwise would not have been entitled until termination of the Trusteeship Agreement." *Zhang II*, 640 F.3d at 1368. The Act accomplished this purpose by waiving the U.S. citizenship requirement for certain benefits. Section 19 of the Act provides:

> (a) The President may . . . provide that the requirement of United States citizenship or nationality provided for in any of the statutes listed on pages 63–74 of the Interim Report . . . shall not be applicable to the citizens of the Northern Mariana Islands. . . .

---

[11] Covenant § 504 created a Commission on Federal Laws. The Commission was tasked with making recommendations to Congress about the application of certain U.S. laws to the CNMI during the interim period before termination of the Trusteeship Agreement. In the Commission's First Interim Report, it observed that "[m]any federal laws require United States citizenship as a prerequisite to enjoyment of rights and privileges conferred by those laws." Interim Report of the N. Mariana Islands Comm'n on Fed. Laws to the Congress of the United States, 4–6 (1982) ("Interim Report"). The Commission concluded that CNMI citizens should enjoy these rights and privileges during the possibly prolonged period before the termination of the Trusteeship Agreement, and it therefore proposed legislation that would treat CNMI citizens as United States citizens for purposes of certain federal statutes already applicable to the CNMI. *Id.* at 6.

13

(b) A statute which denies a benefit or imposes a burden or a disability on an alien, his dependents, or his survivors shall, for the purposes of this Act, be considered to impose a requirement of United States citizenship or nationality.

Reading the two subsections together, § 19(b) clarifies which of the statutes listed in the Interim Report referenced in § 19(a) contains a "requirement of United States citizenship." Thus, § 19(b) defines the type of statutory provision for which the President may waive a requirement of United States citizenship pursuant to the authority granted in § 19(a).

Appellants read § 19(b) out of context when they contend that it actually reads a U.S. citizenship requirement into all U.S. statutes that "den[y] a benefit or impose[] a burden or a disability on an alien." It turns the Act of 1983 on its head to conclude that § 19(b) *excludes* aliens from both the benefits and the burdens of a wide range of laws. The very purpose of the 1983 Act was to *include* CNMI citizens, who remained "aliens" until the official termination of the Trusteeship Agreement in 1986, within benefits programs that explicitly required U.S. citizenship. We therefore join the Federal Circuit in holding that § 19 of the Act of 1983 has no effect on the applicability of FICA to nonresident workers in the CNMI. *See Zhang II*, 640 F.3d at 1368–70.

*B. The FICA Exemption for Nonresident Filipino Workers in Guam Does Not Extend to Nonresident Chinese Workers in the CNMI.*

Appellants next argue that even if FICA applies to nonresident workers and their employers in the CNMI generally, Appellants fit within an exemption to FICA taxation that Congress created for certain nonresident workers in Guam. The exemption on which Appellants rely, however, is expressly limited to Filipino citizens admitted to Guam under H-2 visas. *See* 26 U.S.C. § 3121(b)(18).[12] Pursuant to Covenant § 606(b), then, *Filipinos* admitted to the CNMI under H-2 visas arguably would be exempt from FICA. However, even if we overlooked the fact that Employees were not admitted to the CNMI pursuant to H-2 visas, the exemption remains plainly inapplicable because Employees are Chinese nationals.[13]

---

[12] This section of FICA exempts from the definition of employment any "service performed in Guam by a resident of the Republic of the Philippines while in Guam on a temporary basis as a nonimmigrant alien admitted to Guam pursuant to section 101(a)(15)(H)(ii) of the Immigration and Nationality Act." 26 U.S.C. § 3121(b)(18).

[13] We need not decide whether the exemption would apply to Filipinos in the CNMI who were not admitted pursuant to H-2 visas but were instead admitted pursuant to the CNMI's local immigration law. This is a close question. During the relevant time period—2004 to 2007—the CNMI was not subject to the Immigration and Naturalization Act, and instead maintained the authority to create its own immigration laws. Accordingly, from 2004 to 2007, temporary workers entered the CNMI pursuant to the CNMI's Nonresident Workers Act. *See* 3 N.

(continued...)

Moreover, as Appellants concede, Filipinos were not the only temporary nonresident workers in Guam when the exemption was created. *See* U.S. House of Rep., Comm. on the Judiciary, Subcomm. on Immigration, Citizenship, and Int'l Law, *The Use of Temporary Alien Labor on Guam* 3–4 (1975). In light of this demographic reality, Congress's decision to expressly limit the exemption to Filipinos, in part because of our nation's unique political ties with the Philippines, suggests that the exemption was not meant to cover all nonresident workers in Guam. In sum, Congress singled out Filipinos for preferential treatment. Because it is undisputed that Employees are not Filipinos, the exemption does not apply to them.

*C. FICA and SECA Apply in Their Entirety to the CNMI as They Apply to Guam.*

Section 606(b) states that "[t]hose laws of the United States which impose excise and self-employment taxes to support . . . the United States Social Security system will . . . become applicable to the [CNMI] as they apply to Guam." Covenant § 606(b). Appellants contend that even if FICA generally applies to the CNMI, the employee portion does not apply because it is an income tax, not an

---

[13](...continued)
Mar. I. Code § 4411, *et seq*. Thus, although temporary nonresident Filipinos in the CNMI are the exact type of worker Congress sought to exempt from FICA, these workers do not technically satisfy all statutory elements of the exemption.

excise or self-employment tax. *See* 26 U.S.C. § 3101(a) (imposing "on the income of every individual a tax"). In other words, Appellants read § 606(b) as if it contains an additional limitation: "Those laws of the United States which impose *only* excise taxes and *only* self-employment taxes to support . . . the United States Social Security system will . . . become applicable to the [CNMI] as they apply to Guam." Appellants misread the provision.

Section 606(b) does not contain the limitation suggested by Appellants, nor does it state that *excise taxes* apply in the CNMI as in Guam. Instead, § 606(b) provides that those *laws which impose* such taxes apply in the CNMI as in Guam. The difference is subtle but crucial: Laws imposing excise taxes, and not simply the excise taxes themselves, apply in the CNMI as in Guam. In short, if a law imposes an excise tax to support Social Security, the law—not just that part of the law imposing an excise tax—applies in the CNMI as in Guam.[14] Because FICA imposes an excise tax, it applies in the CNMI as in Guam. And because FICA

---

[14] Although it might be possible to treat 26 U.S.C. § 3111, the employer portion of FICA, as a separate law from § 3101, the employee portion, such treatment is untenable. Both § 3101 and § 3111 rely on § 3121, among other provisions. Thus, § 3111 is incomplete without the remainder of FICA. Because § 3111 cannot be viewed as a "law" in isolation from the overarching statute, the law at issue in Covenant § 606(b) is not merely the employer portion of FICA. The law is instead FICA as a whole, which necessarily includes the employee portion.

17

subjects employees in Guam to taxation, it subjects employees in the CNMI to FICA taxes as well.

This plain reading of § 606(b) is reinforced by the section's additional reference to laws imposing self-employment taxes. While the reference to laws imposing excise taxes is sufficient to capture FICA in its entirety, self-employment taxes that support Social Security are not included in FICA. Instead, they are found in the Self-Employment Contributions Act ("SECA"). *See* 26 U.S.C. §§ 1401–03. Therefore, while there are three general taxes that support the Social Security system—the employee FICA tax, the employer FICA tax, and SECA taxes—there are only two *laws imposing* those taxes—FICA and SECA. And Covenant § 606(b)'s language is designed to render both laws applicable to the CNMI as they apply to Guam.

Any doubt that this reading is correct is dispelled when § 606(b) is considered in the context of the Covenant as a whole. Another of the Covenant's provisions, Section 601(a), provides that "[t]he *income* tax laws in force in the United States" apply in the CNMI "in the same manner as those laws are in force in Guam." Covenant § 601(a) (emphasis added). The reason for the omission of any specific reference to income taxes in § 606(b) is therefore apparent: Section 601(a) already makes clear that such taxes are applicable in the CNMI. Section

18

601(a) thus clarifies that "[t]hose laws of the United States which impose excise and self-employment taxes to support . . . the United States Social Security System" do indeed include the employee portion of FICA.

To the extent that the phrase "those laws" is ambiguous, in that the laws could be broken down further to include only 26 U.S.C. § 3111(a) (the portion of FICA imposing an excise tax), rather than all of FICA, we may look to extrinsic drafting sources to resolve this ambiguity. *See Diamond v. Chakrabarty*, 447 U.S. 303, 315 (1980) ("[O]ur obligation is to take statutes as we find them, guided, if ambiguity appears, by the legislative history and statutory purpose."). The available extrinsic evidence overwhelmingly suggests that the drafters intended that all FICA taxes apply.

Both the House and Senate Reports produced in connection with Congress's approval of the Covenant provide: "Subsection (b) [of Covenant § 606] assures that the laws of the United States which impose taxes to support . . . the United States Social Security System will become applicable to the Northern Marianas as they are applicable to Guam upon termination of the Trusteeship Agreement . . . ." H.R. Rep. No. 94–364, at 11 (1975); S. Rep. No. 94–433, at 83 (1975). As the Federal Circuit aptly observed, "[t]he reports do not distinguish the employer

FICA tax from the employee FICA tax, nor do they suggest that one tax applies but the other does not." *Zhang II*, 640 F.3d at 1374.

The Section–by–Section Analysis of the Covenant—published by the Marianas Political Status Commission, which assisted in the Covenant's drafting—also does not distinguish between the employer and employee FICA taxes. *See Zhang II*, 640 F.3d at 1375 (noting that "Congress considered the Section–by–Section Analysis prior to approving the Covenant") (citing S. Rep. No. 94–433, at 65–94); *N. Mariana Islands*, 399 F.3d at 1065 ("We have relied in previous opinions on the Marianas Political Status Commission's authoritative Section–by–Section Analysis of the Covenant to assist us in discerning the meaning of the Covenant.") (internal quotation marks omitted). Describing Covenant § 606(b), the Section–by–Section Analysis states:

> Subsection (b) [of § 606] assures that the laws of the United States which impose taxes to support or which provide benefits from the United States Social Security System will become applicable to the Northern Marianas as they are applicable to Guam upon termination of the Trusteeship Agreement. . . . At this time as well, *those laws of the United States which impose taxes to support the United States Social Security System will become applicable.* The reason that the Covenant is structured in a way which does not make the United States social security laws applicable immediately is that the taxes which are imposed to support the social security system are very burdensome as compared to the taxes which are paid by the people of the Northern Marianas today . . . [T]hese laws will become effective in the Northern Marianas no later

than termination of the Trusteeship, at which time the entire Covenant will be effective.

Marianas Political Status Comm'n, *Section–by–Section Analysis of the Covenant to Establish a Commonwealth of the Northern Mariana Islands*, 80–81 (1975) (emphasis added).

Likewise, the Commission on Federal Laws, *see* Covenant § 504, did not distinguish between the two taxes. In pertinent part, the summary section of the Commission's Second Interim Report states: "Employers and employees in the Northern Mariana Islands are made subject to taxes imposed by [FICA] to support the federal social security system at the time the social security systems of the Northern Mariana Islands and the United States are merged . . . ." Second Interim Report of the N. Mariana Islands Comm'n on Fed. Laws to the Congress of the United States 415 (1985). More specifically, the Second Interim Report contains a section entitled "Employment Taxes," which explains that under FICA, "[t]he employer and employee are each required to pay taxes." *Id.* at 465.

In light of this legislative history, we resolve any ambiguity in § 606(b) by concluding that the word "laws" refers to the entire law containing the tax in question—i.e., FICA and SECA. *See also Zhang I*, 89 Fed. Cl. at 281 ("The[] legislative documents are uniform in their treatment of section 606(b),

21

unambiguously demonstrating that all FICA tax provisions were intended to apply to the CNMI.").

Moreover, reading § 606(b) to apply the employer portion of FICA without the employee portion would mean subjecting CNMI employers but not CNMI employees to FICA taxation, even though many of the exempt CNMI employees would be able to receive benefits under the system. *See Zhang II*, 640 F.3d at 1363 (discussing the Court of Federal Claims' conclusion that Congress clearly intended to avoid such an absurd result).

Ultimately, the text of § 606(b) provides that FICA—a law imposing an excise tax—applies to the CNMI as it applies to Guam. In Guam, employees are subject to FICA, and thus the same is true in the CNMI, regardless of whether that tax is an excise tax or an income tax. It is the law containing the excise tax that applies to the CNMI as to Guam, not merely the "excise tax" itself. *See* Covenant § 606(b).[15]

---

[15] We note that the district court also relied on Covenant § 601(a) and (c) in concluding that FICA applies in its entirety to the CNMI. However, we may affirm on any ground supported by the record. *See Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1030 (9th Cir. 2013), *cert. dismissed*, 134 S. Ct. 624 (2013). Because we hold that Covenant § 606(b) renders both employee and employer FICA taxes applicable to the CNMI, we do not reach the parties' alternative contentions concerning the applicability of Covenant § 601(a) and (c).

*D. The Applicability of FICA to Appellants Through the Covenant Is Not Unconstitutionally Vague.*

Appellants argue that, because the IRS has not explained consistently why FICA taxes apply to them, the statutory scheme is unconstitutionally vague. *See Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497–99 (1982) (explaining that the void for vagueness doctrine applies to civil statutes). Contrary to Appellants' suggestion, however, the question is not whether the government applied or interpreted FICA consistently. Instead, the question is whether the scheme that subjects Appellants to FICA taxes is "so vague and indefinite as really to be no rule or standard at all," *Boutilier v. INS*, 387 U.S. 118, 123 (1967), or whether a person of ordinary intelligence could understand that the scheme requires payment of FICA taxes, *see Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 946 (9th Cir. 2013).

FICA's applicability to Appellants is not unclear, as evidenced most prominently by Appellants' payment of FICA taxes from 2004 through 2007. *See, e.g.*, *United States v. Moore*, 109 F.3d 1456, 1467 (9th Cir. 1997) (finding Gun Control Act was not unconstitutionally vague where "[t]he record show[ed] that both [defendants] understood their respective legal obligations"). Moreover, the Court of Federal Claims, the Federal Circuit, and the District Court for the

23

Northern Mariana Islands have each reached the same conclusion—that Appellants are subject to FICA taxes. If anything, that these courts have arrived at this conclusion by different statutory routes suggests that the relevant statutory scheme advised Appellants in multiple ways that they must pay FICA taxes.

Appellants themselves, all courts to consider the issue, and the IRS have consistently read the statutory scheme as requiring Appellants to pay employer and employee FICA taxes. Appellants' position was not frivolous, and they were justified in requesting a refund from the IRS. But having a colorable argument that FICA taxes do not apply does not render the statute unconstitutionally vague.[16]

## IV. Conclusion

For the foregoing reasons, we **AFFIRM** the district court's entry of judgment on the pleadings in favor of the United States on Appellants' claims, as

---

[16] Moreover, it does not appear that Appellants face any penalty. They simply must pay the tax. This is not a situation where a party acted in reliance on the law (or in ignorance of a law due to lack of clarity) only to be subject to a penalty or, worse yet, criminal sanctions, because it acted in accordance with a reasonable understanding of the law. Thus, to the extent that vagueness concerns apply at all in this case, those concerns are de minimis. *See, e.g.*, *Groome Resources Ltd., L.L.C. v. Par. of Jefferson*, 234 F.3d 192 (5th Cir. 2000) (affirming entry of permanent injunction against Parish, which delayed granting a zoning accommodation to the developer of an Alzheimer's care facility, where the delay would impose financial penalties upon the developer and the Parish argued in part that statutory vagueness justified the delay).

24

well as the district court's entry of judgment on the pleadings in favor of the United States on the United States' counterclaim.

**COUNSEL**

Craig E. Stewart (argued), Kelsey Israel-Trummel, and Edward Patrick Swan, Jr., Jones Day, San Francisco, California; Steven P. Pixley, Saipan, Northern Mariana Islands, for Plaintiff-Counter-Defendant-Appellant Concorde Garment Manufacturing.

Colin M. Thompson, Thompson Law Office, LLC, Saipan, Northern Mariana Islands, for Plaintiffs-Appellants Fang Lin Ai, et al.

Bridget M. Rowan (argued), Tamara W. Ashford, Teresa T. Milton, United States Department of Justice, Tax Division, Washington, District of Columbia; Alicia A.G. Limtiaco, United States Attorney, United States Attorney's Office, Saipan, Northern Mariana Islands, for Defendant-Counter-Claimant-Appellee.