**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | No. 14-50315 |
| v. | D.C. No. 3:13-cr-03254-BTM-1 |
| DAVID ROSALES-AGUILAR, *Defendant-Appellant.* | OPINION |

Appeal from the United States District Court
for the Southern District of California
Barry T. Moskowitz, Chief District Judge, Presiding

Argued and Submitted
September 1, 2015—Pasadena, California

Filed April 12, 2016

Before: Alex Kozinski, Diarmuid F. O'Scannlain
and Jay S. Bybee, Circuit Judges.

Opinion by Judge Kozinski

# SUMMARY*

## Criminal Law

The panel affirmed a conviction on two counts of attempted illegal reentry, and stayed further proceedings pending a Supreme Court decision on a sentencing issue, in a case in which the government impeached a defense expert with statements that the defendant made voluntarily to Border Patrol officers but that weren't *Miranda* compliant.

The panel held that the district court did not err by admitting the statements to impeach the defendant's account of the events – that he lacked the specific intent necessary for attempted illegal reentry because he was under the influence of heroin and meth – on cross-examination of a defense psychiatrist who testified that the defendant told him he had no memory of going to the border or speaking with the agent. The panel emphasized that it was not the psychiatrist's observations that were being impeached, but the defendant's perception, recollection and veracity that were being impeached by the defendant's own prior inconsistent statements.

The panel held that the district court didn't err in denying the defendant's motion for judgment of acquittal. The panel held that a jury could reasonably find (1) that the defendant had taken a substantial step by crossing the border and waiting in line for about an hour and a half to reach the inspection station, and (2) that the defendant had the specific

---

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

intent to enter without the express consent of the Attorney General. The panel rejected the defendant's contention that the second count was added by the prosecutor vindictively, and held that the district court didn't abuse its discretion by denying an adverse-inference jury instruction relating to the destruction of a port-of-entry video.

Regarding the defendant's challenge to the district court's assessment of a drug-trafficking offense enhancement pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(i) based on his 1998 conviction for sale of cocaine base under California Health and Safety Code § 11352(a), the panel held that the version of § 11352(a) under which the defendant was convicted does not categorically qualify as a drug trafficking offense because it permits a conviction for transportation of a controlled substance for personal use. The panel deferred resolution of whether § 11352(a) is divisible, thereby permitting application of the modified categorical approach, pending the Supreme Court's decision in *Mathis v. United States*, No. 15-6092.

## COUNSEL

Kara Hartzler (argued), Federal Defenders of San Diego, Inc., San Diego, California, for Defendant-Appellant.

Laura E. Duffy, U.S. Attorney, Brandon James Kimura, Special Assistant U.S. Attorney, Peter Ko, Assistant U.S. Attorney Chief, Appellate Section Criminal Division, Colin M. McDonald (argued), Assistant U.S. Attorney, San Diego, California, for Plaintiff-Appellee.

## OPINION

KOZINSKI, Circuit Judge:

David Rosales-Aguilar was convicted under 8 U.S.C. § 1326 of two counts of attempted illegal reentry. At trial, Rosales did not testify but he snuck in his recollection of events by using an expert witness as a conduit for his own words. The principal issue in this appeal is whether it was proper to allow the government to impeach the expert with statements that Rosales made voluntarily but that weren't *Miranda* compliant.

## FACTS

On June 21, 2013, Border Patrol Officer Moreno spotted Rosales in the pedestrian entry line at San Ysidro. "Disheveled" and "grungy," Rosales "stood out" from the crowd. Rosales told Moreno that he was going to Chula Vista but didn't have any entry documents. He also told Moreno that he wasn't a U.S. citizen. When Moreno asked Rosales how he intended to enter the United States, Rosales replied that he was "just going to walk through and they wouldn't stop him." According to Moreno, it's not unusual for pedestrians to "make a break for it" once they arrive at the front of the line.

Moreno searched Rosales and found a syringe in his pocket but didn't ask whether Rosales was intoxicated. Rosales was arrested and processed for expedited removal. During this process, Rosales said he left Mexico "[t]o find work and to live in the United States." Because these statements were not preceded by a *Miranda* warning, the

district court suppressed them but ruled they were voluntary and could therefore be used for impeachment.

Rosales was removed but three days later, on June 24, Border Patrol officers found him in a bush approximately 300 yards north of the border. When arrested, Rosales was high on methamphetamine and heroin.

After conducting a field interview, the agents took Rosales to a nearby station. Before interrogating him, the agents read him his *Miranda* rights. As they did so, Rosales—who "was, to some degree, under the influence of heroin and methamphetamine"—was mumbling to himself and nodding off. During this interrogation, Rosales admitted that he had been previously removed and didn't ask the U.S. Attorney General for permission to reenter, that he climbed over the border fence and that he was on his way to San Diego. The district court suppressed Rosales's statements after viewing the videotape and finding that the waiver "couldn't have been [made] knowingly because he was dozing off during part of it." But, as with statements made during his expedited removal on June 21, the court found that these statements were made voluntarily. Thus, the court concluded, "if [Rosales] takes the stand and he denies any of the facts that are set forth in the sworn statement, the government can impeach him with the sworn statement."

Rosales was charged with attempted reentry by a removed alien in violation of 8 U.S.C. § 1326 based on the June 24 bush incident. This indictment was superseded by adding a second count of attempted illegal reentry based on Rosales's June 21 appearance at the port of entry. Rosales was found guilty on both counts.

In calculating the Sentencing Guidelines range, the district court applied a 16-level enhancement upon finding that a 1998 conviction for sale of cocaine base under California Health and Safety Code section 11352(a)—for which Rosales was sentenced to three years in prison—qualified as a drug trafficking offense under U.S. Sentencing Guidelines section 2L1.2(b)(1)(A)(i). The court calculated a Guidelines range of 84 to 105 months, but varied the sentence down to 54 months.

## DISCUSSION

Rosales challenges the use of his suppressed statements during the cross-examination of his expert witness. Rosales also appeals the district court's denial of his motion for judgment of acquittal, denial of his motion to dismiss the June 21 count for vindictive prosecution and rejection of an adverse-inference jury instruction based on the routine destruction of border security videos by the government. Rosales also challenges the district court's assessment of a drug-trafficking offense enhancement.

## I. Impeachment Exception

Before trial, Rosales filed a motion in limine to prevent the government from using his suppressed statements for purposes other than impeachment of his testimony at trial. Rosales's lawyer explained that he intended to call Dr. Matthew Carroll, a psychiatrist who evaluated Rosales on two occasions, as an expert witness. Dr. Carroll would testify that Rosales told him he had no memory of going to the border or speaking with the agent on June 21, and that Dr. Carroll found this behavior consistent with an individual who is under the influence of drugs. The court warned Rosales that

if he offered the hearsay statements—which the court deemed admissible under Federal Rule of Evidence 803(4)—the government would likely be able to impeach the declarant with Rosales's suppressed statements under Federal Rule of Evidence 806.

At trial, Rosales's theory of the case was that he lacked the specific intent necessary for attempted illegal reentry because he was under the influence of heroin and meth. Defense counsel asked Dr. Carroll to talk about his interview with Rosales. Dr. Carroll testified that Rosales "says he doesn't remember anything [that occurred on June 21]. He doesn't remember going [to the port of entry]. He doesn't remember talking to anybody. He doesn't remember it happening at all." And as to the June 24 incident, Dr. Carroll testified, "[Rosales] has some memory about that incident. What he remembers is being asleep in the bushes and all of a sudden seeing Border Patrol agents, and he does remember talking to them and then going to a hospital after that." When Dr. Carroll asked Rosales how he got there, Rosales said, "I don't know; I was just using; I don't know what happened; I don't remember that night at all." Dr. Carroll also testified that Rosales told him that if the Border Patrol hadn't found him, he "would have walked back to Mexico." The court then allowed the government to use Rosales's suppressed statements in cross-examining Dr. Carroll.

"Ever since its inception, the rule excluding evidence seized in violation of the Fourth Amendment has been recognized as a principal mode of discouraging lawless police conduct . . . . [W]ithout it the constitutional guarantee against unreasonable searches and seizures would be a mere 'form of words.'" *Terry* v. *Ohio*, 392 U.S. 1, 12 (1968) (quoting *Mapp* v. *Ohio*, 367 U.S. 643, 655 (1961)). The Supreme Court,

however, "has carved out exceptions to the exclusionary rule . . . where the introduction of reliable and probative evidence would significantly further the truthseeking function of a criminal trial and the likelihood that admissibility of such evidence would encourage police misconduct is but a 'speculative possibility.'" *James* v. *Illinois*, 493 U.S. 307, 311–12 (1990) (quoting *Harris* v. *New York*, 401 U.S. 222, 225 (1971)).

One of these exceptions "permits prosecutors to introduce illegally obtained evidence for the limited purpose of impeaching the credibility of the defendant's own testimony." *Id.* at 312. In *Harris* and *Oregon* v. *Hass*, 420 U.S. 714 (1975), the Court clarified that this exception "permit[s] prosecutors to impeach defendants using incriminating yet voluntary and reliable statements elicited in violation of *Miranda* requirements." *James*, 493 U.S. at 312.

But the Court has refused to "[e]xpand[] the class of impeachable witnesses from the defendant alone to *all* defense witnesses." *Id.* at 313 (emphasis added). In *James*, one out of three boys fired a gun into a group of eight other boys, "killing one boy and seriously injuring another." *Id.* at 309. Five members of the larger group testified that the shooter "had 'reddish' hair, worn shoulder length in a slicked-backed 'butter' style." *Id.* at 310. The evening after the shooting, two detectives found Darryl James at his mother's beauty parlor. *Id.* at 309. After being arrested, James told the detectives that he dyed and curled his hair "to change his appearance." *Id.* The trial court suppressed his statements after finding that "the detectives lacked probable cause for his warrantless arrest." *Id.* James didn't take the stand, but he called as a witness a family friend who "testified that on the day of the shooting she had taken James to register for high

school and that, at that time, his hair was black." *Id.* at 310. Over James's objection, the trial court allowed the state to impeach the witness with James's prior statements to the police. *Id.*

The Supreme Court held that the state court erred in allowing the prosecution to use the suppressed statements to impeach the defense witness. *Id.* at 320. The Court reasoned that the impeachment exception "penalizes defendants for committing perjury by allowing the prosecution to expose their perjury through impeachment using illegally obtained evidence," but "leaves defendants free to testify truthfully on their own behalf." *Id.* at 314. "The exception thus generally discourages perjured testimony without discouraging truthful testimony." *Id.* The Court refused to expand "the impeachment exception to encompass the testimony of all defense witnesses" because it "would not have the same beneficial effects." *Id.*

*James* is distinguishable. The witness there was testifying as to her own perception and recollection. *Id.* at 310. In contrast, the statements impeached here were not the observations of Dr. Carroll as to Rosales's activities on the day he was arrested. Rather, they were Rosales's account of the events as communicated to Dr. Carroll, e.g., "[h]e would have walked back to Mexico." It was Rosales's perception, recollection and veracity that were being impeached by Rosales's own prior inconsistent statements.

We see this case as much closer to *Harris* and *Hass*: "The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." *Harris*, 401 U.S. at 226. Insofar as Rosales's statements to Dr.

Carroll differ from the ones he made to the Border Patrol officers, the inconsistencies cast doubt on *his* veracity, not Dr. Carroll's. They were thus properly admitted to impeach Rosales's account of the events under dispute. Because Rosales does not challenge the district court's finding that his statements to the Border Patrol officers were voluntary and reliable, the district court did not err by admitting these statements.

## II. Motion for Judgment of Acquittal on the June 21 Count

"Where a defendant moves for acquittal at the close of the government's evidence, we review *de novo* whether sufficient evidence exists to support a guilty verdict." *United States* v. *Stewart*, 420 F.3d 1007, 1014 (9th Cir. 2005). In making this review, "we assess the evidence in the light most favorable to the prosecution, determining whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 1014–15 (internal quotation marks omitted).

Attempted illegal reentry under 8 U.S.C. § 1326 "essentially requires two elements: (1) the specific intent to reenter without consent; and (2) an overt act that was a substantial step towards this illegal reentry." *United States* v. *Leos-Maldonado*, 302 F.3d 1061, 1063 (9th Cir. 2002).

Rosales argues that his presence "in secondary screening, standing alone, does not prove that he was attempting to reenter the U.S. without permission." *United States* v. *Valdez-Novoa*, 780 F.3d 906, 923 (9th Cir. 2015) (as amended). But a jury could reasonably find Rosales had taken a substantial step by crossing the border and waiting in line for about an

hour and a half to reach the inspection station. There, he told Officer Moreno that he was traveling to Chula Vista, even though he had no entry documents and hoped "they wouldn't stop him."

The jury could also reasonably have found that Rosales had the specific intent to enter "without the express consent of the Attorney General." *United States* v. *Gracidas-Ulibarry*, 231 F.3d 1188, 1196 (9th Cir. 2000) (en banc).[1] In early 2013, Rosales received written notice advising him that he was "inadmissible," and that "before commencing [his] travel to the United States," he had to first "obtain permission from the Secretary of Homeland Security to reapply for admission." While a noncitizen who has been removed may "request permission at a port of entry to reapply for admission into the United States," *id.* at 1194, the jury was entitled to find that Rosales had no such intent, based on his statements to Moreno. The district court thus didn't err in denying Rosales's motion for judgment of acquittal on the June 21 count.

### III.  Vindictive Prosecution

Over defense counsel's objection, the government took Rosales's fingerprint exemplars. Defense counsel reported to the district court that the prosecutor had unlawfully taken Rosales's fingerprints without a court order, over counsel's objection and in violation of California's rules of professional conduct. On the same day Rosales moved to sanction the

---

[1] In 2002, Congress transferred the authority to grant such consent from the Attorney General to the Secretary of Homeland Security. *See* Homeland Security Act of 2002, Pub. L. No. 107–296, §§ 402, 1517, 116 Stat. 2135, 2177–78, 2311 (2002) (codified at 6 U.S.C. §§ 202, 557).

prosecutor, the prosecutor added a second count of attempted illegal reentry based on Rosales's June 21 appearance at the port of entry. Rosales moved to dismiss this second charge, alleging that it was vindictively added by the prosecutor.

"A prosecutor violates due process when he seeks additional charges solely to punish a defendant for exercising a constitutional or statutory right." *United States* v. *Gamez-Orduño*, 235 F.3d 453, 462 (9th Cir. 2000). The district court found that the prosecutor submitted the superseding indictment "before he had notice" that the defense was going to move to sanction the prosecutor. The prosecutor therefore couldn't have been "seek[ing] . . . to punish [Rosales] for exercising" his rights. *Id.*

## IV.  Destruction of Evidence

After the superseding indictment was filed, defense counsel requested any port-of-entry video showing Rosales at San Ysidro. But, by the time the prosecution had filed the superseding indictment, the video (if there had ever been one depicting Rosales) had already been destroyed as the government routinely destroys San Ysidro port-of-entry videos after 90 days. Rosales requested an adverse-inference jury instruction based on the destruction of this video, which the district court denied.

"We review a district court's refusal to give an adverse inference instruction, when properly raised by the appellant, for abuse of discretion." *United States* v. *Sivilla*, 714 F.3d 1168, 1172 (9th Cir. 2013). Here, abuse of discretion is a two-part test. *Id.* at 1173. First, we identify if the district court applied the correct legal rule. *Id.* If it didn't, then the court abused its discretion. *Id.* Second, we determine

whether the court's application of this legal rule was either "(1) illogical, (2) implausible, or (3) without support" in the record. *Id.*

The district court correctly determined that, in deciding whether to give a remedial jury instruction, "[c]ourts must balance 'the quality of the Government's conduct' against 'the degree of prejudice to the accused,' where the government bears the burden of justifying its conduct and the accused of demonstrating prejudice." *Id.* (quoting *United States* v. *Loud Hawk*, 628 F.2d 1139, 1152 (9th Cir. 1979) (en banc) (Kennedy, J., concurring)). The prosecutor played no role in the destruction of the videotape. But even if we were to decide the prosecution played a role in the destruction of the videotape by failing to bring the second charge more promptly, there is no indication that "there was anything on the video that in any way would be helpful" to Rosales. Therefore, the district court didn't abuse its discretion by denying an adverse-inference jury instruction relating to the destruction of the port-of-entry video.

## V.  Sentencing Enhancement

The crime of attempted illegal reentry carries a base offense level of 8 under U.S. Sentencing Guidelines section 2L1.2(a). A court may increase this base by 16 levels if a defendant "has a prior conviction for a 'drug trafficking offense,' and the sentence on the prior conviction exceeded thirteen months." *United States* v. *Leal-Vega*, 680 F.3d 1160, 1163 (9th Cir. 2012) (quoting U.S.S.G. § 2L1.2(b)(1)(A)(i)). Rosales argues that his 1998 conviction for violating California Health and Safety Code section 11352(a) is not a "drug trafficking offense" under the Guidelines.

To determine whether Rosales's '98 conviction is a "drug trafficking offense," we apply a three-step process. *Almanza-Arenas* v. *Lynch*, 809 F.3d 515, 521 (9th Cir. 2015) (en banc). First, "we compare the elements of the state offense to the elements of the generic offense defined by federal law." *Lopez-Valencia* v. *Lynch*, 798 F.3d 863, 867 (9th Cir. 2015). If "the elements of the state crime are the same as or narrower than the elements of the federal offense, then the state crime is a categorical match and every conviction under that statute qualifies as [a drug trafficking offense]." *Id.* Second, if the statute "criminalizes conduct that goes beyond the elements of the federal offense,"—that is to say, if the statute is "overbroad"—then we must determine whether the statute is "divisible or indivisible." *Id.* at 867–68 (internal quotation marks omitted). "If the statute is indivisible, 'our inquiry ends, because a conviction under an indivisible, overbroad statute can *never* serve as a predicate offense.'" *Id.* at 868 (quoting *Medina-Lara* v. *Holder*, 771 F.3d 1106, 1112 (9th Cir. 2014)). Third, if the statute is both overbroad and divisible, we apply the "modified categorical approach." *Id.* "At this step, we may examine certain documents from the defendant's record of conviction to determine what elements of the divisible statute he was convicted of violating." *Id.*

The Guidelines define "drug trafficking offense" as "an offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of, or offer to sell a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 2L1.2 application n.1(B)(iv). California Health and Safety Code section 11352(a) punishes any person "who transports, imports into this state, sells, furnishes, administers, or gives away, or

offers to transport, import into this state, sell, furnish, administer, or give away, or attempts to import into this state or transport" certain controlled substances.

The version of section 11352(a) under which Rosales was convicted does not categorically qualify as a drug trafficking offense because it permits a conviction for transportation of a controlled substance for personal use. *See People* v. *Cortez*, 212 Cal. Rptr. 692, 693 (Cal. Ct. App. 1985).[2] "We have identified transportation of a controlled substance *for personal use* as outside the scope of the drug trafficking enhancements." *United States* v. *Almazan-Becerra*, 482 F.3d 1085, 1089 (9th Cir. 2007).[3]

Rosales doesn't challenge the district court's analysis under the modified categorical approach. Thus, the only question before us is whether section 11352(a) is divisible.

Recently, the Supreme Court granted certiorari in *United States* v. *Mathis*, 786 F.3d 1068 (8th Cir. 2015). As described by the government, the question presented in *Mathis* is "[w]hether a court may employ the 'modified categorical approach' . . . when a defendant has been convicted under a

---

[2] In 2013, section 11352 was amended to provide that "transport" means transport for sale. A.B. no. 721, 2013 Cal. Stat. ch. 504. We do not address whether the amended statute would categorically qualify as a drug trafficking offense with respect to the conduct it proscribes.

[3] We have held that section 11352(a) is divisible with respect to drug type, because the statute lists alternative controlled substances and "because California law confirms that the controlled substance is an essential element of the crime." *United States* v. *Huitron-Rocha*, 771 F.3d 1183, 1184 (9th Cir. 2014). *Huitron-Rocha* didn't address whether the *act* element (i.e., transport vs. sell) is divisible.

state statute that sets out, in the alternative, several forms of committing an offense, or whether instead the applicability of the modified categorical approach depends on a state-law inquiry into whether the alternative forms of the offense represent 'means' or 'elements.'" Brief for the United States at I, *Mathis* v. *United States*, No. 15-6092, 2015 WL 9855126 (U.S. Dec. 17, 2015). A "deep and widespread" conflict regarding what constitutes a divisible statute has developed among our sister courts following *Descamps* v. *United States*, 133 S. Ct. 2276 (2013). Brief for the United States at 17. On the one hand, the Sixth, Eighth and Tenth Circuits find a statute listed in the alternative sufficient to trigger the modified categorical approach analysis. *United States* v. *Ozier*, 796 F.3d 597, 601–02 (6th Cir. 2015); *United States* v. *Trent*, 767 F.3d 1046, 1058–61 (10th Cir. 2014); *Mathis*, 786 F.3d at 1075. We and the Fourth Circuit hold that to apply the modified categorical approach a statute must list "elements" in the alternative. *Almanza-Arenas*, 809 F.3d at 523; *Omargharib* v. *Holder*, 775 F.3d 192, 198–99 (4th Cir. 2014).

We have struggled to determine how we apply this test of divisibility. *See Rendon* v. *Holder*, 764 F.3d 1077 (9th Cir. 2014); *Rendon* v. *Holder* 782 F.3d 466, 467–73 (2015) (dissentals); *Almanza-Arenas*, 809 F.3d at 528 (Owens, J., concurring) ("The only consistency in these cases is their arbitrariness."); *Id.* at 529 (Watford, J., concurring in the judgment) ("I would overrule *Rendon*, as I think its approach to divisibility analysis is inconsistent with the approach required by *Descamps*." (citation omitted)). But, despite the dissonance, the *Almanza-Arenas* majority confirmed "that if the elements of the crime are alternative to each other—not the mode or means of proving an element of the crime—the statute is divisible." *Id.* at 523 (majority opinion).

Because the petition for certiorari granted in *Mathis* is directly relevant to our resolution of Rosales's challenge to his sentence enhancement, we will defer the resolution of this one issue pending the Supreme Court's decision in *Mathis*.

\*        \*        \*

Conviction **AFFIRMED**.  Future proceedings in this case are stayed until further order by the court.  No petition for rehearing or petition for rehearing en banc may be filed until this court files its disposition resolving the sentencing question.