T.C. Memo. 2016-143

UNITED STATES TAX COURT

CHARLES A. SISSON AND MARALEE M. SISSON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16614-09.                    Filed August 1, 2016.

       CS, an individual, filed for ch. 11 bankruptcy in 2006. CS's
ch. 11 bankruptcy case was open throughout 2007. During 2007 CS
earned self-employment income.

       <u>Held</u>: CS is liable for the self-employment tax on his self-
employment income for 2007.

Charles A. Sisson and Maralee M. Sisson, for themselves.

<u>David L. Zoss</u>, for respondent.

[*2]                    MEMORANDUM OPINION


MORRISON, <u>Judge</u>:  On April 7, 2009, the respondent (referred to here as the IRS) issued a notice of deficiency to petitioners, Charles A. Sisson and Maralee M. Sisson, for the 2005, 2006, and 2007 tax years.  The IRS determined the following deficiencies and penalties:[1]

| Year | Deficiency | Accuracy-related penalty |
|------|-----------|--------------------------|
| 2005 | $104,481 | $20,896 |
| 2006 | 42,236 | 8,447 |
| 2007 | 49,484 | 9,897 |

On July 9, 2009, the Sissons filed a petition with the Tax Court for redetermination.[2]  Since then, as explained below, various aspects of the case have been resolved through (1) a partial dismissal for lack of jurisdiction, (2) stipulations of the parties, and (3) waiver of arguments by the parties.  The issue that remains is a legal one.  The Sissons contend that Charles Sisson is not liable for self-employment tax for 2007 because his bankruptcy estate is liable.  We hold that Charles Sisson is liable.

---

[1]All dollar amounts are rounded to the nearest dollar.

[2]When they filed their Tax Court petition, the Sissons resided in Minnesota.

**[*3]** <u>Background</u>

1. <u>Bankruptcy petition; Charles Sisson's earnings from the IMF</u>

On June 23, 2006, Charles Sisson filed a voluntary petition under chapter 11 of the Bankruptcy Code.[3]  The filing of his petition created a bankruptcy estate, which is a separate entity for bankruptcy purposes and a separate taxpayer for federal income tax purposes.  <u>See</u> sec. 1398;[4] 11 U.S.C. sec. 541(a) (2006); <u>Williams v. Commissioner</u>, 123 T.C. 144, 147-148 (2004).

During 2007 Charles Sisson, a United States citizen, performed services in the United States as an employee of the International Monetary Fund, or IMF.  He received wages from the IMF of $207,422 that included a $8,739 "gross up" to help him pay the self-employment tax on his earnings.  Although Charles Sisson was a wage-earning employee of the IMF in the usual sense of the word "wage", the Internal Revenue Code's employment-tax provisions do not classify his work for the IMF as employment and do not classify the payments he received from the IMF as wages.  These definitional points are explained in greater detail below.  In recognition of the definitions in the Internal Revenue Code, we will refer to the

---

[3]The Bankruptcy Code is title 11 of the United States Code.

[4]Unless otherwise noted, all references to sections are to the Internal Revenue Code of 1986, as amended, which is title 26 of the United States Code.

**[\*4]** payments that Charles Sisson received from the IMF as earnings rather than wages. The IMF withheld no tax from his earnings--not the tax imposed by section 1, the self-employment tax imposed by section 1401, or the FICA (Federal Insurance Contributions Act) tax imposed by sections 3101(a) and 3111(a). Because Charles Sisson was in bankruptcy during 2007, his IMF earnings for that year became property of his bankruptcy estate pursuant to 11 U.S.C. sec. 1115(a)(2) (2006). He paid his IMF earnings over to his bankruptcy estate. His bankruptcy estate paid his personal living expenses during 2007 and continued to do so until he retired from the IMF in 2008.

2.     The Sissons' 2007 federal income tax return

For the 2007 tax year, the Sissons jointly filed a federal income tax return (on Form 1040).[5] In reporting their liability for self-employment tax on that return, they did not include in their self-employment income any of Charles Sisson's IMF earnings. The only self-employment income or losses they reported were self-employment losses from his consulting and farming activities not related to the IMF. As a consequence of these consulting and farming losses, the Sissons reported that Charles Sisson had no self-employment-tax liability for 2007.

---

[5]The title of Form 1040 is "U.S. Individual Income Tax Return".

[*5]   In reporting their liability for the tax under section 1 on their 2007 return, the Sissons reported that Charles Sisson's IMF earnings were includible in their gross income.  As explained below, the Sissons erred in so doing.  The IMF earnings were properly includible in the gross income of Charles Sisson's bankruptcy estate, not the gross income of the Sissons, for purposes of section 1.  See sec. 1398(e)(2).  The Sissons claimed various deductions, most of which were attributable to losses from his consulting and farming activities.  These deductions reduced their reported taxable income so that their reported tax liability under section 1 was only $112.

3.    Notice of deficiency

In the notice of deficiency, the IRS determined that Charles Sisson's self-employment income for 2007 was $207,422 (the amount of his IMF earnings from the year) and that his self-employment-tax liability for the year was $17,512.  The notice of deficiency also made adjustments to the Sissons' tax liability under section 1 for 2007.  For example, it disallowed deductions from the reported consulting and farming losses.  However, the notice of deficiency did not make an adjustment to remove Charles Sisson's IMF earnings from the Sissons' income for purposes of the section 1 tax.

[*6] The deficiency determined for 2007 was $49,484. This amount was computed as follows:

| | |
|---|---:|
| Sec. 1 tax owed | $32,084 |
| Self-employment tax owed | 17,512 |
| Sec. 1 tax reported | (112) |
| Deficiency | 49,484 |

4. Filing of the Tax Court petition; dismissal of the case with respect to Charles Sisson's 2005 tax year

On July 9, 2009, the Sissons filed the Tax Court petition. At the time, however, Charles Sisson still had an open chapter 11 bankruptcy case. The Bankruptcy Code's automatic-stay provision, 11 U.S.C. sec. 362(a)(8) (2006), barred Charles Sisson from filing a Tax Court petition with respect to any taxes that had accrued before he filed his bankruptcy petition, i.e., June 23, 2006. His 2005 income tax liability had accrued before he filed his bankruptcy petition. Therefore, on August 17, 2010, we dismissed the case as to Charles Sisson for the 2005 tax year for lack of jurisdiction.

5. Stipulations and motion under Tax Court Rule of Practice and Procedure 122(a)

The parties entered into the following stipulations:

• Maralee Sisson has no deficiency for 2005, 2006, or 2007, because of the operation of section 6015(c).

[*7] • Charles Sisson has no deficiency for 2006.

• Charles Sisson is not liable for an accuracy-related penalty for 2006 or 2007.

These three stipulations left only one item unresolved: the amount of Charles Sisson's deficiency for 2007. The parties made a final stipulation that "the sole remaining issue in dispute is whether petitioner Charles Sisson owes self-employment tax for 2007." The parties also filed a motion, which was granted on September 9, 2014, to have the case resolved without a trial under Tax Court Rule of Practice and Procedure 122(a).

## Discussion

When a taxpayer files a petition in response to an IRS notice of deficiency (and the filing of the petition is not barred by the automatic-stay provision of the Bankruptcy Code), we have jurisdiction to redetermine the amount of the tax deficiency for the tax years at issue. Secs. 6213(a), 6214(a). A deficiency is generally defined as the tax owed minus the tax reported. Sec. 6211(a). For this purpose, the tax includes both the tax under section 1 and the self-employment tax under section 1401. Sec. 6211(a) (providing that tax includes tax imposed by subtitle A, sections 1 to 1563, and subtitle B, sections 2001 to 2801). The notice of deficiency made several adjustments to the Sissons' liability under section 1 for

**[*8]** the 2007 tax year. Even though the IRS made these adjustments to the Sissons' section 1 liability, the parties have stipulated that the only remaining disputed issue is whether Charles Sisson is liable for the self-employment tax for the 2007 tax year. Furthermore, the motion under Tax Court Rule of Practice and Procedure 122(a) filed by the parties states that the only unresolved issue is whether Charles Sisson owes self-employment tax and "as a result" is liable for a deficiency in income tax. This "as a result" statement suggests that the amount of the deficiency currently asserted by the IRS hinges on Charles Sisson's liability for self-employment tax, not the Sissons' liability for the tax imposed by section 1. Because we consider that the IRS no longer asserts that the deficiency results from the Sissons' liability for the section 1 tax, we do not resolve in this opinion any issues related to the Sissons' liability for the section 1 tax.[6] We consider only Charles Sisson's liability for the self-employment tax. (We do discuss the Sissons' liability for the section 1 tax but only in the course of explaining the effect of section 1398 on Charles Sisson's self-employment-tax liability.)

---

[6]There is still a deficiency because, as we hold, Charles Sisson has a self-employment-tax liability for 2007. The parties will give us their views of the amount of the deficiency in their computations under Tax Ct. R. Pract. & Proc. 155. We expect they will address whether the deficiency is $17,512 (that is, the $17,512 self-employment-tax liability minus zero self-employment tax reported) or $17,400 (that is, the $17,512 self-employment-tax liability minus the $112 of section 1 tax reported) or some other amount.

**[\*9]**   The Sissons contend that Charles Sisson does not owe self-employment tax because, in their view, his bankruptcy estate is liable for the self-employment-tax liability corresponding to his IMF earnings.  They do not contend that Charles Sisson's self-employment earnings should be reduced by his losses from consulting and farming activities.  Therefore, we do not consider whether his self-employment income should be reduced by those losses.  We consider only the Sissons' argument that Charles Sisson's bankruptcy estate is the true taxpayer with respect to the self-employment tax corresponding to his IMF earnings.[7]

The self-employment tax is one of two types of tax on individuals that are designed to fund the Social Security system.  Fang Lin Ai v. United States, 809 F.3d 503, 512 (9th Cir. 2015).  First, there are the FICA taxes on wages paid to employees.  Secs. 3101(a) and (b), 3111(a) and (b).  Second, there is the self-employment tax on self-employment income, which is generally defined as income from services other than as an employee.  Sec. 1402(b)(2), (a), (c).

For FICA tax purposes, "wages" are defined as all remuneration for "employment".  Sec. 3121(a).  Employment is generally defined as any service performed by an employee for an employer, but a specific exception excludes services performed in the employ of an international organization such as the IMF.

---

[7]No relevant facts are in dispute.

**[*10]** Sec. 3121(b); sec. 7701(a)(18); Exec. Order No. 9751, 11 Fed. Reg. 7713 (July 13, 1946). Because of this exception regarding international organizations, Charles Sisson's earnings from the IMF are not considered wages under FICA.

The self-employment tax also has a special rule for services performed for international organizations in the United States by a United States citizen. Sec. 1402(c)(2)(C). Self-employment income is defined as the net earnings from self-employment derived by an individual. Sec. 1402(b). The net earnings from self-employment are defined as the gross income derived by an individual from any trade or business carried on by the individual, minus deductions. Sec. 1402(a). The term "trade or business" generally excludes the performance of service by an individual as an employee, but includes the performance of service in the United States by an individual United States citizen in the employ of an international organization. Sec. 1402(c), (c)(2). Because of this special rule of inclusion regarding service for international organizations, Charles Sisson's earnings from the IMF are considered self-employment income.

It is the Sissons' contention that the corresponding self-employment-tax liability is payable by Charles Sisson's bankruptcy estate. To sort out this contention, we consult sections 1398 and 1399. These provisions were added by the Bankruptcy Tax Act of 1980, Pub. L. No. 96-589, sec. 3(a)(1), 94 Stat. at

[*11] 3397. The Senate Finance Committee gave the following background when they were being considered by Congress:

> At present, there are no rules in the Internal Revenue Code specifying whether the bankruptcy estate constitutes a taxable entity apart from the individual debtor; and, if so, how tax attributes are to be allocated between the estate and the debtor. This has resulted in uncertainty and litigation concerning the Federal income tax liability of the bankruptcy estate and the debtor. The provisions of section 3 of the bill, adding new sections 1398 and 1399 to the Internal Revenue Code, provide the first comprehensive statutory treatment of these issues.

S. Rept. No. 96-1035, at 24 (1980), 1980-2 C.B. 620, 632. With that background in mind, we now describe the pertinent portions of sections 1398 and 1399.

Section 1398(a) provides that "this section shall apply to any case under chapter 7 * * * or chapter 11 * * * of title 11 of the United States Code in which the debtor is an individual." Section 1398(c)(1) provides: "Except as otherwise provided in this section, the taxable income of the estate shall be computed in the same manner as for an individual. The tax shall be computed on such taxable income and shall be paid by the trustee." Section 1398(e)(1) provides that the gross income of the estate includes the gross income of the debtor to which the estate is entitled under the Bankruptcy Code. Section 1398(e)(2) provides that the gross income of the debtor does not include any item to the extent the item is included in the gross income of the estate by reason of section 1398(e)(1). Section 1398(g) provides

**[\*12]** that the bankruptcy estate succeeds to and takes into account various tax attributes of the debtor, such as net operating loss carryovers. Section 1399 provides: "Except in any case to which section 1398 applies, no separate taxable entity shall result from the commencement of a case under title 11 of the United States Code."

Section 1398 applies to Charles Sisson's bankruptcy case because his case is a chapter 11 case and he is an individual debtor. Sec. 1398(a). Thus, his bankruptcy estate is a separate taxable entity and it is liable for the "tax" referred to in section 1398(c)(1).

The tax referred to in section 1398(c)(1) includes the tax under section 1. We reach this conclusion because section 1398(c)(1) defines the "taxable income" of the estate and requires the "tax" computed on "such taxable income" to be paid by the bankruptcy trustee. Section 1 is a tax on taxable income. Therefore, the section 1 tax is a tax imposed on the bankruptcy estate by operation of section 1398(c)(1).

In calculating the taxable income of the bankruptcy estate, section 1398(e)(1) requires the estate to include in its gross income any of the debtor's income to which the estate is entitled under the Bankruptcy Code. Under section 1115(a)(2) of the Bankruptcy Code, 11 U.S.C. sec. 1115(a)(2), the property of the

[*13] bankruptcy estate of an individual debtor includes the debtor's earnings from services performed by the debtor after the filing of the bankruptcy petition. Charles Sisson is an individual debtor. His IMF earnings during 2007 were for services he performed after he filed his bankruptcy petition. Therefore, his bankruptcy estate is entitled to his IMF earnings under 11 U.S.C. sec. 1115(a)(2) and it must include them in its gross income under section 1398(e)(1). The IMF earnings are not includible in Charles Sisson's gross income. See sec. 1398(e)(2). Thus, the Sissons should not have reported the IMF earnings as their income on their tax return for purposes of the tax under section 1.

By contrast to the tax under section 1, the self-employment tax is a tax on self-employment income. Sec. 1401(a). Self-employment income is defined as the net earnings from self-employment derived by an individual. Sec. 1402(b). The net earnings from self-employment are defined as the gross income derived by an individual from a trade or business, less deductions. Sec. 1402(a). Thus, the self-employment tax is not a tax on taxable income. It is therefore not the tax imposed on the bankruptcy estate by section 1398(c)(1). Section 1398 includes no other provision, apart from section 1398(c)(1), imposing tax liability on a bankruptcy estate. Because section 1398(c)(1) imposes the section 1 tax on the bankruptcy estate, but not the self-employment tax, we infer that Congress did not

[*14] intend a bankruptcy estate to be subject to the self-employment tax. We conclude that a bankruptcy estate is not liable for the self-employment tax.[8]

We reject the Sissons' argument that Charles Sisson's bankruptcy estate is liable for the self-employment tax. We hold that he is liable for the self-employment tax on his IMF earnings for 2007.

Decision will be entered under

Tax Court Rule of Practice and

Procedure 155.

---

[8]Our conclusion is consistent with the IRS's published guidance in Notice 2006-83, sec. 4.02, 2006-2 C.B. 596, 598. However, we do not rely on the notice or give it the deference that would be due a regulation. See Costantino v. TRW, Inc., 13 F.3d 969, 981 (6th Cir. 1994).